By her petition for a writ of mandamus, plaintiff Florence J. Morris asks this Court to order Circuit Judge Ingram Beasley to vacate his order compelling her expert witnesses to produce their income tax records and other information regarding their sources of income.
The relevant facts are as follows: Morris filed a medical malpractice action, alleging that the respondents negligently conducted a cervical laminectomy which left her permanently disabled. Petitioner retained two expert witnesses; both were deposed by defense counsel. Thereafter, this action was set for trial on one occasion, but was continued. Subsequently, the action was set for trial on November 16, 1987. On October 16, 1987, respondents filed a "motion to compel information from plaintiff's experts." Specifically, respondents sought to obtain the expert witnesses' "federal and state income taxes for the years 1978 through the present date." Petitioner, in response, filed a written objection in which she sought to prevent production of the income tax records; she also requested a protective order pursuant to Rule 26 (c), Ala.R.Civ.P.
Judge Beasley ordered the production of the income tax records and denied petitioner's subsequent motion for reconsideration.
Insofar as we can determine, the issue of whether an expert witness's income tax records are "privileged" is a question of first impression in this State.
Rule 26, Alabama Rules of Civil Procedure provides:
 "(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
 "(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
"* * *
 "(4) Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
 "(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate. *Page 787 
 "(B) A party may discover facts known or opinions held by an expert who has been retained, specially employed or assigned by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35 (b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.
"* * *
 "(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition or production or inspection, the court in the circuit where the deposition or production or inspection is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ."
In view of the fact that the Alabama Rules of Civil Procedure are patterned after, and are strikingly similar to, the Federal Rules of Civil Procedure, "a presumption arises that cases construing the Federal Rules are authority for construction of the Alabama Rules." Assured Investors Life Ins. Co. v. NationalUnion Associates, Inc., 362 So.2d 228 (Ala. 1978).
It is well recognized that the courts have liberally construed the rules on discovery so as to provide both parties with relevant information fundamental to proper litigation on all the facts. Ex parte Old Mountain Properties, Inc., 415 So.2d 1048
(Ala. 1982). The Supreme Court synopsized the liberal standard in an often-quoted passage from the leading case of Hickman v.Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947):
 "We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of `fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case."
This liberality has its limits, however, and Rule 26 (c), supra, grants the trial court the power to control the use of the process and to preclude its abuse by any party. Old MountainProperties, supra. One court expanded the Hickman Court's metaphor to castigate a party who made unreasonable discovery requests of his opponent's expert witness, in stating:
 "[I]nstead of using rod and reel, or even a reasonably sized net, [the requesting party] would drain the pond and collect the fish from the bottom. This exercise goes beyond the bounds set by the discovery rules."
In Re: IBM Peripheral EDP Devices Anti-trust Litigation,77 F.R.D. 39, 42 (N.D.Cal. 1977).
In the instant case, petitioner argues, in essence, that the trial court's order, a month before the date set for trial, requiring non-party expert witnesses to produce all of their personal income tax records since 1978 exceeds the scope of discovery. Petitioner points out that respondents took the depositions of both expert witnesses and had ample opportunities to delve into any subject matters concerning the case and that the respondents have at their disposal relevant information concerning both expert witnesses with respect to their hourly rates for testifying in cases, the number and names of states in which they have testified as experts, the number of depositions given as experts, and the approximate percentage of income received from medical-legal cases.
Respondents, on the other hand, take the position that they are entitled to all financial information and that the expert witnesses' bias is a legitimate issue in this case that can be revealed only by "access to the tax returns and financial documents to verify or contradict their testimony."
The Supreme Court has stated in dictum that tax records and related documents "in the hands of the taxpayer" are not absolutely privileged. St. Regis Paper Co. v. United States,368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961). In ruling on discovery *Page 788 
motions, however, the lower federal courts, "due to the sensitive information contained therein and the public interest to encourage the filing by taxpayers of complete and accurate returns," have fashioned a qualified privilege imposing high standards of relevancy before parties will be ordered to reveal such records. Mitsui Co. v. Puerto Rico Water ResourcesAuthority, 79 F.R.D. 72, 80 (1978). Eastern Auto Distributors,Inc. v. Peugeot Motors of America, Inc., 96 F.R.D. 147 (E.D.Va. 1982). See also "Discovery of Federal Income Tax Returns and the New `Qualified' Privileges," 5 Duke L.J. 938 (1984).
Furthermore, in Tele-Radio Systems LTD. v. De ForestElectronics, Inc., 92 F.R.D. 371, 375 (D.N.J. 1981), the court held:
 "Unless `clearly required in the interests of justice, litigants ought not to be required to submit such returns as the price for bringing or defending a lawsuit.' Where, as here, the information sought is otherwise available, and defendants have not made their income an issue in the case, the income tax returns are not properly discoverable."
See also, Wiesenburger v. W.E. Hutton Co., 35 F.R.D. 556
(S.D.N.Y. 1964). (Citations omitted.)
Similar reasoning was used by the court in DeMasi v. Weiss,669 F.2d 114 (3d Cir. 1982), wherein a physician brought an anti-trust action after his application for hospital staff privileges had been denied. The court addressed the issue of whether 97 nonparty witnesses, as well as 10 defendants, should be ordered to disclose their gross incomes derived from their medical practices. Plaintiff sought the information so that his expert witnesses could compare and contrast the income of physicians with staff privileges as opposed to physicians without staff privileges, and, from this comparison, estimate damages. The court observed, speaking through Judge Aldisert:
 "It can scarcely be denied that the public exposure of one's wallet or purse is, in the abstract, an invasion of privacy. Nor can it be denied that private individuals have legitimate expectations of privacy regarding the precise amount of their incomes. Unless placed in issue, as in litigation, in a loan application, or when a federal statute or regulation may require publication of annual compensation, for instance, individuals employed in the private sector expect that the amount of their income need be divulged only to the taxing authorities, and to them with an expectation of confidentiality."
It is true, as the respondents argue, that other courts have allowed discovery of income tax records of a party to the litigation; however, as the following cases indicate, the courts were extremely cautious in requiring production of these records.
In Shaver v. Yacht Outward Bound, 71 F.R.D. 561 (N.D.Ill 1976), the plaintiff's husband had been killed while a guest aboard a yacht, and she sought the owner's federal income tax records to ascertain whether the expenses of maintaining the yacht were claimed as business deductions. In ordering the production of the tax records, the court held that the party resisting discovery cannot claim a privilege if his records would "cast significant light" on issues he raised. Although the court ordered the defendant to produce the requested tax records for plaintiff's inspection, the court stated that such disclosure should not be routinely required and wrote:
 "[F]ederal courts have been cautious in ordering the disclosure of tax returns insisting, at the very least, that it reasonably appear they are relevant and material to the matters in issue. . . . In most instances, it has been held that production of a tax return should not be ordered unless there appears to be a compelling need for the information it contains, such as is not otherwise readily obtainable."
Shaver at 564 (citations omitted).
This Court affirmed a trial court's order to produce tax returns in the case of Constantine v. Constantine, 274 Ala. 374,149 So.2d 262 (1963), a divorce case in which the former wife attempted to modify a divorce judgment because her former husband's income and net worth had increased since the divorce. The former husband denied *Page 789 
the allegation that his income had greatly increased, thereby placing "the question of his income in issue." In fact, the former husband's income was the single issue in the case. But this Court recognized the need for privacy of such returns, stating:
 "This is not to be taken as approval of indiscriminate exposure of the contents of such returns when production of copies is required. Courts may and should make proper protective orders governing the use of and access to the contents of such returns."
274 Ala. at 378-79, 149 So.2d at 266-67. See also, Smith v.Bader, 83 F.R.D. 437 (S.D.N.Y. 1979).
This general federal policy circumscribing disclosure of one's income tax records was aptly summarized by Judge Sirica as follows:
 "Unless taxpayers are assured that the personal information contained in their tax returns will be kept confidential, they likely will be discouraged from reporting all of their taxable income to the detriment of the government. The opposite is also true. Unless confidentiality is guaranteed, taxpayers will likely refrain from using all of the tax-saving measures to which they are lawfully entitled."
Payne v. Howard, 75 F.R.D. 465, 469 (D.D.C. 1977).
After weighing the liberal policy of the discovery rules against the emerging qualified privilege disfavoring disclosure of one's income tax records, we hold that petitioner's expert witnesses are not required to produce their income tax records.
The incremental value that such information would provide respondent for purposes of showing bias is substantially outweighed by the prejudice that would be imposed on a person not a party to the proceedings, and involving an issue that is not controlling. In essence, to require a non-party witness to produce all of his income tax records for nine years preceding trial would clearly be more prejudicial than probative.
We are not, however, unmindful that such records would be discoverable in appropriate circumstances.
 "If this were a case where the taxpayer had made an issue of his income [as in Constantine, supra], there would be no question that he had waived the confidentiality of his returns and had thereby opened them up to scrutiny by his opponent. Unless a litigant himself makes an issue of his income, his income tax returns are not subject to discovery."
Federal Savings Loan Insurance Corp. v. Krueger, 55 F.R.D. 512,514 (N.D.Ill. 1972); see also, Kingsley v. Delaware, L. W.R.R., 20 F.R.D. 156 (S.D. New York 1957); and Heathman v. UnitedStates District Court for the Central District of California,503 F.2d 1032, 1035-37 (9th Cir. 1974) (Chambers, J., dissenting).
Our holding in this case is not unlike our holding in Otwell v.Bryant, 497 So.2d 111 (Ala. 1986), in which this Court held that the fact that one of the defendant's expert witnesses was covered by the same liability insurer as the defendant did not show such a connection as to allow its use to impeach the credibility of the witness when to do so would be to inject the issue of insurance into the case.
The writ of mandamus is therefore due to be granted, and the trial court is hereby ordered to vacate the order compelling plaintiff's expert witnesses to produce their personal financial records and income tax returns for nine years preceding the date of trial.
WRIT GRANTED.
JONES, SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.
BEATTY, J., dissents.