Hilda C. Plitt, as administratrix of the estate of Patrick Plitt, deceased, filed an action in the Madison Circuit Court against Dr. Thomas M. Griggs, alleging that he had negligently caused the death of Patrick Plitt.[1] At the close of the plaintiff's evidence, the trial court granted the defendant's motion for a directed verdict. Ms. Plitt appeals from the resulting judgment.
Patrick Plitt had difficulty sleeping, and he consulted a physician, Dr. Paul LeGrand. Dr. LeGrand diagnosed Mr. Plitt as having a sleep disorder known as obstructive sleep apnea, which is a condition whereby a person's air passage is obstructed while sleeping, causing him to awaken numerous times during the night. As a consequence, Plitt would experience exhaustion during waking hours, often falling asleep doing normal daily activities. Dr. LeGrand discussed with Mr. Plitt the treatment alternatives. Two options were non-surgical. The third alternative was a surgical procedure known as uvulopalatopharyngoplasty ("UP3"), by which a palatal resection is done, that is, the part of the air passage causing the obstruction is removed. Plitt opted for the UP3 surgery. Dr. LeGrand recommended that Dr. Griggs perform the surgery.
Dr. Griggs performed the surgery, without complications, at approximately 11:30 a.m. Thereafter, Plitt rested in a recovery room for about 90 minutes. To relieve the post-operative pain, Dr. Griggs prescribed 0.3 milligram dosages of Buprenex. According to Dr. Griggs, a dosage of Buprenex would relieve pain for four to six hours. Doses were administered at 2:00 p.m. and 9:00 p.m.
Dr. Griggs instructed the hospital staff to observe Plitt hourly for the first four *Page 1319 
hours following the surgery and then once every four hours thereafter. Dr. Griggs testified that in cases where the surgery was difficult or the patient had excessive bleeding or swelling he would recommend that the patient be placed in the intensive care unit and monitored mechanically. He stated that Plitt had no problems during surgery or in the recovery room. He testified that he saw Plitt at approximately 3:30 p.m. Hospital records indicate that hospital personnel checked on Plitt in his hospital room 16 times between 1:30 p.m. and 11:45 p.m. The records show that Plitt's vital signs were measured and recorded 5 times during this period. On the fifth visit, Plitt was found to be nonresponsive. Attempts to resuscitate him failed.
After having filed this action against Dr. Griggs, Hilda Plitt designated Dr. Herbert J. Dietrich as an expert medical witness. In her brief, Ms. Plitt states that Dr. Dietrich answered questions concerning his practice of medicine, his sources of income, his prior experiences as an expert witness in medical malpractice cases, his yearly earned income, his hourly rate for giving expert medical testimony, and the extent of his activities as an expert medical witness during 1988, the year preceding the trial. Dr. Griggs, in his brief, does not dispute that Dr. Dietrich answered such questions. Accordingly, we will proceed as if Dr. Dietrich had provided the above information.
While deposing Dr. Dietrich, counsel for Dr. Griggs asked Dr. Dietrich to give the name of the accountant who prepared his 1988 tax return. Dr. Dietrich refused to answer the question. Dr. Griggs filed a motion to compel Dr. Dietrich to answer the question. In that motion, Dr. Griggs argued that Dr. Dietrich's accountant could provide information regarding the amount of income generated by Dr. Dietrich from testifying on behalf of plaintiffs in medical malpractice actions.
The trial court granted the motion by the following order:
 "The referenced action is before the court on motions filed by defendant to require that deponent Herbert J. Dietrich, Jr., answer the questions put to him at page 115 of his deposition, viz.: 'Who would be the accountant that prepared your income tax return in 1988?' Upon consideration of the subject motions, and the pleadings, the court is of the opinion that they are due to be granted. The information sought by defendants' counsel in the question objected to is not related to the witness's income tax returns, but rather to the identity of the person who would have the information regarding the amount of income generated by deponent from testifying on behalf of plaintiffs in medical malpractice actions. Such evidence would be relevant to the question of the witness's bias or prejudice and, therefore, admissible.
 "Accordingly, it is ORDERED, ADJUDGED, and DECREED that said motions be, and the same hereby are, granted; and that deponent witness Herbert J. Dietrich, Jr., disclose the name address of the accountant who prepared his income tax returns in 1988 within thirty (30) days of the date of this order. Should the deponent refuse to answer such question, or followup questions referable to the same issue, then he shall not be permitted to testify at the trial of this action."
Dr. Dietrich refused to answer the question. He did not testify at trial. In an affidavit in opposition to Dr. Griggs's motion for summary judgment, Dr. Dietrich stated that he believed Dr. Griggs's operative treatment was substandard in that he allowed the use of what Dr. Dietrich considered to be an inappropriate anesthesia. Dr. Dietrich also stated that Dr. Griggs's post-operative care of Patrick Plitt was substandard because, Dr. Dietrich said, he failed to order adequate monitoring of Patrick Plitt during his recovery.
At trial, counsel for Ms. Plitt presented Dr. Derek Spencer Lipman as an expert medical witness. During his examination, Ms. Plitt's counsel asked Dr. Lipman to give his opinion concerning whether Dr. Griggs's treatment of Patrick Plitt fell below the standard of care due medical patients recovering from UP3 surgery. Defense counsel objected to the question on *Page 1320 
the grounds that Dr. Lipman was not qualified to answer, under Ala. Code 1975, § 6-5-548, because, unlike Dr. Griggs, he was not certified by the American Board of Otolaryngology. The trial court sustained the objection.
On appeal, Ms. Plitt raises three issues.
 I.
Ms. Plitt argues, based on this Court's decision in Ex parteMorris, 530 So.2d 785 (Ala. 1988), that the trial court exceeded the scope of its authority by ordering Dr. Dietrich to provide Dr. Griggs with the name of the accountant who prepared his 1988 tax return. Dr. Dietrich, she argues, had the right to refuse to divulge the identity of his accountant, and, therefore, she should have been allowed to call Dr. Dietrich as a witness. Ms. Plitt notes that Dr. Dietrich provided extensive information at deposition concerning his practice of medicine, his sources of income, and his prior experiences as an expert witness in medical malpractice cases.
Rule 26 governs the scope of discovery. It states in pertinent part:
 "(b) Scope of Discovery. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
 "(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
". . . .
 "(4) Trial preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
 "(A)(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. (ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate.
 "(B) A party may discover facts known or opinions held by an expert who has been retained, specially employed or assigned by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.
". . . .
 "(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition or production or inspection, the court in the circuit where the deposition or production or inspection is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or under burden or expense. . . ."
The Alabama Rules of Civil Procedure permit very broad discovery, and the rules are to be construed broadly and *Page 1321 
liberally. Ex parte Dorsey Trailers, Inc., 397 So.2d 98 (Ala. 1981); Campbell v. Regal Typewriter Co., 341 So.2d 120 (Ala. 1976). However, Rule 26(c) recognizes that the right of discovery is not unlimited and gives the court broad power to control the use of the process and to prevent its abuse by any party. The rule does not place an arbitrary limit on discovery, but vests the trial court with discretion in the discovery process. Ex parte Dorsey Trailers, supra; Campbell v. RegalTypewriter Co., supra. Therefore, where the trial court has issued an order compelling discovery, this Court will reverse that order only in those cases where a clear abuse of discretion is shown. See Ex parte Dorsey Trailers, supra, citing Ex parte Alabama Power Co., 280 Ala. 586, 196 So.2d 702
(1967).
The trial court is bound to exercise its broad discretion in a manner that will implement the policy of full disclosure of relevant information and at the same time afford a party, or others, maximum protection against harmful side effects that would result from unnecessary disclosure. Ex parte DorseyTrailers, supra; Ex parte Guerdon Industries, Inc.,373 So.2d 322 (Ala. 1979).
Rule 26 plainly indicates that discovery is not limited to matters competent as evidence at trial. "Relevancy," as used in our discovery rules, means relevant to the subject matter of the action; evidence is relevant if it affords a reasonable possibility that the information sought will lead to other evidence that will be admissible. Ex parte Dorsey Trailers, supra; Drews v. Bank of Wadley, 350 So.2d 402 (Ala. 1977); 8 Wright and Miller, Federal Practice and Procedure § 2008 (1970).
In Ex parte Morris, supra, a medical malpractice case, the plaintiff retained two expert witnesses, both of whom were deposed by defense counsel. Subsequently, the defendants filed a motion to compel the plaintiff's experts to produce their federal and state income taxes for the nine years preceding the request. The plaintiff filed a motion in opposition to the defendants' motion and requested a protective order pursuant to Rule 26(c). The trial court granted the defendants' motion. The plaintiff filed a petition for a writ of mandamus to this Court, asking it to order the trial court to vacate its order compelling her expert witnesses to produce their income tax records.
This Court granted the petition and held:
 "After weighing the liberal policy of the discovery rules against the emerging qualified privilege disfavoring disclosure of one's income tax records, we hold that petitioner's expert witnesses are not required to produce their income tax records.
 "The incremental value that such information would provide respondent for purposes of showing bias is substantially outweighed by the prejudice that would be imposed on a person not a party to the proceedings, and involving an issue that is not controlling. In essence, to require a non-party witness to produce all of his income tax records for nine years preceding trial would clearly be more prejudicial than probative."
530 So.2d at 789.[2]
In determining whether the trial court clearly abused its discretion in ordering *Page 1322 
Dr. Dietrich to provide the name of the accountant who prepared his 1988 tax return, we must first determine whether that was relevant information that would invoke the discovery policy of full disclosure. Dr. Griggs stated that he requested disclosure of the name of Dr. Dietrich's accountant to attempt to verify statements by Dr. Dietrich that tend to show bias, that is, to verify Dr. Dietrich's testimony concerning the percentage of income received from testifying in medical malpractice actions. In Ex parte Morris, although we held that the qualified privilege against disclosing personal income tax records outweighed our liberal policy of discovery, we stated that the income tax records sought to be discovered in that case were of value in tending to show the bias of the plaintiff's expert witness. There is no question that Dr. Dietrich's accountant could provide relevant information concerning Dr. Dietrich's income earned from testifying in medical malpractice cases.
Next, we must determine whether requiring Dr. Dietrich to identify his accountant would produce harmful side effects as a result of unnecessary disclosure. See Ex parte Dorsey, supra. Ms. Plitt argues that to allow Dr. Griggs to obtain financial information about Dr. Dietrich from his accountant is to emasculate our decision in Ex parte Morris. Dr. Griggs argues that the trial court did not abuse its discretion in requiring Dr. Dietrich to provide him with the name of his accountant or be precluded from testifying at trial. He contends that, in order to show bias, he could have Dr. Dietrich's accountant verify Dr. Dietrich's testimony concerning the approximate percentage of income received from testifying as an expert witness in medical malpractice cases without divulging the total amount of income earned by the witness from all sources. He also argues that, if the witness's accountant is deposed, Ms. Plitt could seek an order, pursuant to A.R.Civ.P., Rule 26, limiting the information that the accountant could divulge.
We hold that the trial court did not clearly abuse its discretion in ordering the plaintiff's expert witness to identify the name of the accountant who had prepared his 1988 tax return. By holding as we do in this case, we do not overrule our holding in Ex parte Morris that the qualified privilege against disclosure of personal income tax records outweighs the value of those records. Mere identification of his accountant's name alone would not prejudice Dr. Dietrich. On the other hand, Dr. Dietrich could be prejudiced if his accountant were to divulge financial information not necessary to show bias. However, the means by which to prevent such prejudice from occurring is not by refusing to produce the name of the witness's accountant. Rather, the trial court may make any order that justice requires in order to protect the witness from annoyance, embarrassment, or oppression. Rule 26(c). Unlike income tax records, an accountant who prepares income tax records is able to divulge certain information regarding which the trial court decides if there is any prejudicial effect, and an accountant is able to withhold information the probative value of which the trial court decides is outweighed by its prejudicial effect. Given the trial court's broad discretion to protect a party or person by limiting the scope of cross-examination of a witness at deposition or trial, Ms. Plitt or Dr. Dietrich could have sought to deter Dr. Griggs from discovering prejudicial information by filing a motion for a protective order under Rule 26(c). Thus, in ordering Dr. Dietrich to state the name of *Page 1323 
the accountant who prepared his 1988 income tax return, the trial court did not clearly abuse its discretion.
Ms. Plitt also argues that the trial court should have allowed Dr. Dietrich to testify at trial despite his refusal to disclose the identity of the accountant who had prepared his 1988 income tax return. The trial court has discretion in choosing discovery sanctions, and its decision will not be disturbed on appeal absent an abuse of discretion. Johnson v.Langley, 495 So.2d 1061 (Ala. 1986); Deaton, Inc. v. Burroughs,456 So.2d 771 (Ala. 1984); Tucker v. Tucker, 416 So.2d 1053
(Ala.Civ.App. 1982). See Rule 37, A.R.Civ.P. We find no abuse of discretion by the trial court in this case.
 II.
As we have stated, at trial Ms. Plitt presented Dr. Derek Lipman as an expert medical witness. During examination, Ms. Plitt's counsel asked Dr. Lipman to state his opinion concerning whether Dr. Griggs's care of Patrick Plitt fell below the applicable standard of care. Counsel for Dr. Griggs objected on the ground that Dr. Lipman was not qualified to answer the question as an expert medical witness, because of § 6-5-548(c). For the sake of clarity, we quote the following provisions of § 6-5-548:
 "(a) In any action for injury or damages or wrongful death, whether in contract or in tort, against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case.
". . . .
 "(c) If the health care provider whose breach of the standard of care is claimed to have created the cause of action is certified by an appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similarly situated health care provider' is one who:
 "(1) Is licensed by the appropriate regulatory board or agency of this or some other state; and
 "(2) Is trained and experienced in the same specialty; and
 "(3) Is certified by an appropriate American board in the same speciality; and
 "(4) Has practiced in this specialty during the year preceding the date that the alleged breach of the standard of care occurred.
". . . .
 "(e) The purpose of this section is to establish a relative standard of care for health care providers. A health care provider may testify as an expert witness in any action for injury or damages against another health care provider based on a breach of the standard of care only if he is a 'similarly situated health care provider' as defined above."
(Emphasis added.)
Dr. Griggs is a licensed physician and, additionally, he is certified by the American Board of Otolaryngology. Dr. Lipman received his education and medical certification in his native country, South Africa. Thereafter, he emigrated to the United States, and, since 1977, he has been licensed to practice medicine in the state of Oregon. Although he is certified in otolaryngology by the South African Medical Council, he is not certified by the American Board of Otolaryngology, as is Dr. Griggs. Section 6-5-548(e) provides that a health care provider may testify as an expert medical witness in an action for damages against another health care provider based on a breach of the standard of care only if he is a "similarly situated health care provider." In this case, Dr. Lipman is not a "similarly situated health care provider," because he is not certified by "an appropriate American board in the same specialty" (see § 6-5-548(c)), in this case, the American Board of Otolaryngology. *Page 1324 
Ms. Plitt argues that § 6-5-548 deprives her of equal protection under the United States Constitution and the Alabama Constitution. Specifically, she argues that, because the provisions of § 6-5-548 apply only to medical malpractice actions, the statute imposes a restriction on medical malpractice plaintiffs not imposed on other types of plaintiffs.
In Gideon v. Alabama State Ethics Commission, 379 So.2d 570
(Ala. 1980), this Court enunciated the procedure for determining whether a statute draws a classification that violates the Equal Protection Clause of theFourteenth Amendment:
 "The United States Supreme Court has established two tests to determine whether a statute draws a classification which violates the Equal Protection Clause of the Fourteenth Amendment or whether that statute denies a person substantive due process of law. The Court applies the 'strict scrutiny test' where the classification is based on 'suspect criteria' or affects some fundamental right. The traditional indicia of a suspect class are: (1) A class determined by characteristics which are solely an accident of birth, Frontiero v. Richardson, 411 U.S. 677, 686, 93 S.Ct. 1764, 1770, 36 L.Ed.2d 583 (1972); and (2) A class 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process,' San Antonio School District v. Rodriguez, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16
(1972). The classifications which the United States Supreme Court has held are suspect have been drawn along racial lines, McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), or were based on an individual's alienage, Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). The Court has recognized as fundamental, the right to vote and to associate freely, Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1986); the right to travel interstate, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); and those familial rights [ — matters relating to marriage, procreation, contraception, family relationships, and child rearing and education —] which fall within a recognized 'zone of privacy.' Since the instant case involves neither a 'suspect class' nor a 'fundamental right,' the rational basis test is the proper test to apply to an equal protection challenge. Under the rational basis test the Court asks: (a) Whether the classification furthers a proper governmental purpose, and (b) Whether the classification is rationally related to that purpose."
379 So.2d at 573-74.
Because this case involves neither a "suspect class" nor a "fundamental right," the rational basis test is the proper test to apply to the appellant's equal protection challenge. Thus, we must determine (a) whether the classification furthers a proper governmental purpose, and (b) whether the classification is rationally related to that purpose.
In § 6-5-548(e), the legislature stated that its purpose in enacting § 6-5-548 was "to establish a relative standard of care for health care providers." We hold that the establishment of such a standard of care is a proper governmental purpose. Thus, we must determine whether the classification is rationally related to that purpose.
We hold that the requirement of § 6-5-548(c) — that health care providers who testify as expert medical witnesses in actions for damages against a health care provider certified by an "appropriate American board as a specialist" be certified by an "appropriate American board in the same specialty" as the health care provider against whom he or she testifies — is rationally related to the purpose of establishing a relative standard of care for health care providers. It may be rationally stated that such a requirement ensures that expert medical witnesses are qualified to state whether health care specialists have breached the standard of care. Furthermore, it is not irrational to state that ensuring that expert medical witnesses are qualified *Page 1325 
to testify concerning the appropriate standard of care may result in testimony stating a standard of care that is fair and reasonable. Accordingly, we hold that § 6-5-548(c) does not violate the Equal Protection Clause of the United States Constitution.
Ms. Plitt also argues that § 6-5-548(c) violates her right of equal protection under the Constitution of Alabama. Sections 1, 6, and 22 of Article I, Constitution of Alabama 1901, combine to guarantee the citizens of Alabama equal protection under the laws. Black v. Pike County Commission, 360 So.2d 303 (Ala. 1978), aff'd, 375 So.2d 255 (Ala. 1979). However, Ms. Plitt states no reason, and we are aware of none, that our analysis of the equal protection issue under the United States Constitution should not be equally applicable to her equal protection issue regarding the Alabama Constitution; therefore, we consider the above analysis to apply equally to that issue. See Jefferson County v. Braswell, 407 So.2d 115 (Ala. 1981).
 III.
Ms. Plitt argues that, because she introduced medical treatises that, she argues, establish the appropriate standard of care in this case, the trial court erred in granting Dr. Griggs's motion for a directed verdict. We disagree.
The rule concerning the type of evidence required to establish a breach of the appropriate standard of care in medical malpractice cases is well settled in this state:
 "The general rule in Alabama is that in medical malpractice cases expert medical testimony is required to establish what is and what is not proper medical treatment and procedure. An exception to this general rule exists where an understanding of the doctor's lack of due care or skill requires only common knowledge or experience."
Swendsen v. Gross, 530 So.2d 764, 768 (Ala. 1988), citingPowell v. Mullins, 479 So.2d 1119, 1120 (Ala. 1985).
The facts of this case do not fall within the exception to the general rule. Therefore, expert medical testimony is required to establish what is and what is not proper medical treatment and procedure. Ms. Plitt did not produce such evidence.[3]
 IV.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] Initially, Huntsville Hospital was a party defendant. The trial court granted Huntsville Hospital a final judgment, and Ms. Plitt does not appeal from that judgment.
[2] In Ex parte Morris, we balanced the liberal policy of the discovery rules against the emergence of a qualified privilege against disclosure of a person's income tax records. In support of the policy that the rules of discovery be liberally construed, we set out the pertinent parts of subsections (b) and (c) of Rule 26. We then stated:
 "It is well recognized that the courts have liberally construed the rules on discovery so as to provide both parties with relevant information fundamental to proper litigation on all the facts. Ex parte Old Mountain Properties, Inc., 415 So.2d 1048 (Ala. 1982). The Supreme Court synopsized the liberal standard in an often-quoted passage from the leading case of Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947):
 'We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case.'
 "This liberality has its limits, however, and Rule 26(c), supra, grants the trial court the power to control the use of the process and to preclude its abuse by any party. Old Mountain Properties, supra."
Ex parte Morris, 530 So.2d at 787.
In support of the emergence of a policy disfavoring the disclosure of an individual's income tax records, theMorris Court cited St. Regis Paper Co. v. United States,368 U.S. 208, 82 S.Ct. 289, 7 L.Ed.2d 240 (1961), in which the United States Supreme Court stated in dictum that income tax records and related documents are not absolutely privileged. We then cited the decisions of lower federal courts and other state appellate courts indicating the development of a qualified privilege imposing a high standard of relevancy on those seeking to discover income tax records. See Ex parteMorris, supra, at 787-89.
For a complete discussion of the balancing of the rules of discovery and the qualified privilege against disclosure of personal income tax records, see Ex parte Morris, supra.
[3] We note that Dr. Griggs does not argue that § 6-5-548 requires a plaintiff in a medical malpractice action to establish by expert medical testimony that the defendant breached the appropriate standard of care. Therefore, we do not address that issue.