SELLERS, Justice.
Action Auto Sales, Inc. ("AAS"), has petitioned this Court for a writ of mandamus directing the Clarke Circuit Court ("the trial court") to vacate orders denying AAS's objection to L.M. Stewart and Cathy Cargile's notice of intent to serve subpoenas on nonparties Merchants Bank and accountant Eddie Nicholes and denying AAS's motion for a protective order and to issue an order granting its motion. We grant the petition and issue the writ.
The materials before this Court indicate the following. AAS, a financing company, made loans to Pine City Motors, LLC ("Pine City"), so that Pine City could purchase vehicles for resale. Pursuant to various financing agreements and promissory notes, AAS held security interests in the vehicles purchased by Pine City for resale. Stewart and Cargile purchased a vehicle from Pine City, which allegedly was encumbered by a security interest held by AAS. Stewart and Cargile suggest that, after they took possession of the vehicle, Pine City failed to satisfy its debt to AAS, and AAS or Pine City retained physical possession of the certificate of title for the vehicle. Thereafter, AAS sued Pine City, Stewart, and Cargile, requesting damages and a judgment directing Stewart and Cargile to return the vehicle to AAS.
Stewart and Cargile filed a counterclaim against AAS and a cross-claim against Pine City. Pointing to various Alabama statutes, Stewart and Cargile asserted that their rights in the vehicle are superior to AAS's and that AAS or Pine City improperly retained possession of the certificate of title for the vehicle. Stewart and Cargile also demanded compensatory and punitive damages, asserting theories of negligence and wantonness and conspiracy between AAS and Pine City.
During the period at issue, Vivian Paul was the sole shareholder of AAS. Paul testified during deposition that, on occasion, she had personally loaned or contributed funds to AAS so that AAS could, in turn, make loans to Pine City. Paul testified that AAS used an account at Merchants Bank to facilitate loans to Pine City and that the funds Paul transferred to AAS were deposited into that account.
Paul's testimony suggests that some of or all the transfers she made to AAS were not evidenced by promissory notes. She testified, however, that Nicholes, who *538 worked as the accountant for AAS and for Paul personally, kept track of the loans and contributions Paul had made to AAS, as well as debts owed AAS by Pine City. Paul testified that she, too, had kept records of her transactions with AAS on her personal computer but that, around the time Pine City defaulted on its obligations to AAS, Paul had obtained a new computer and was unable to access her records regarding the transactions on the new computer. According to Stewart and Cargile's answer to AAS's mandamus petition, however, "Paul acknowledged that Nicholes should have duplicate records of all the loan information that was stored on her old computer."
After Paul's deposition, Stewart and Cargile filed notices of intent to serve subpoenas on Merchants Bank and Nicholes. The proposed subpoenas requested that those nonparties produce "[a]ny and all financial records for Vivian Paul, personally, or [AAS] and from Vivian Paul or [AAS] for the past five (5) years." AAS filed an objection to the proposed subpoenas and a motion for a protective order, seeking to limit production to only those records showing "cash contributions, injections or loans from Vivian Paul to [AAS]." AAS asserted that records relating solely to Paul's personal finances, and not to her transactions with AAS, should not be produced.
Following a hearing, the trial court denied AAS's requests to limit the scope of the proposed subpoenas, and AAS filed the present petition for a writ of mandamus. AAS asks this Court to direct the trial court to vacate its orders denying AAS's objection to the proposed subpoenas and its motion for a protective order. In support, AAS argues that records relating solely to Paul's personal finances that have no relation to her dealings with AAS are irrelevant and that their production would, without sufficient justification, invade Paul's privacy interests. This Court stayed the trial-court proceedings pending resolution of AAS's petition.[1]
" 'Discovery matters are within the trial court's sound discretion, and this Court will not reverse a trial court's ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala. 1991). Accordingly, mandamus will issue to reverse a *539 trial court's ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions.'
" Ex parte Ocwen Fed. Bank, FSB, 872 So.2d 810, 813 (Ala. 2003).
"Moreover, this Court will review by mandamus only those discovery matters involving (a) the disregard of a privilege, (b) the ordered production of 'patently irrelevant or duplicative documents,' (c) orders effectively eviscerating 'a party's entire action or defense,' and (d) orders denying a party the opportunity to make a record sufficient for appellate review of the discovery issue. 872 So.2d at 813-14."
Ex parte Meadowbrook Ins. Grp., Inc., 987 So.2d 540, 547 (Ala. 2007).
AAS relies primarily on Ex parte Morris, 530 So.2d 785 (Ala. 1988). In Morris, a medical-malpractice action, the trial court entered an order compelling the plaintiff's expert witnesses to produce their income-tax records for the nine years preceding the trial date, as well as "personal financial records," which the Court did not describe in detail. Id. at 789. The defendants in that case sought the information in an effort to demonstrate bias on the part of the expert witnesses.
The Court in Morris noted that some federal courts had recognized a "qualified privilege" for tax records, which "impos[ed] high standards of relevancy before parties will be ordered to reveal such records." 530 So.2d at 788. Such a qualified privilege was, according to those courts, justified by " 'the sensitive information contained [in tax records] and the public interest to encourage the filing by taxpayers of complete and accurate returns.' " Id. (quoting Mitsui & Co. v. Puerto Rico Water Res. Auth., 79 F.R.D. 72, 80 (D.P.R. 1978) ). The Court also noted that the United States Court of Appeals for the Third Circuit, in reviewing an order compelling nonparties to disclose their gross incomes, had observed:
" 'It can scarcely be denied that public exposure of one's wallet or purse is, in the abstract, an invasion of privacy. Nor can it be denied that private individuals have legitimate expectations of privacy regarding the precise amount of their incomes. Unless placed in issue, as in litigation, in a loan application, or when a federal statute or regulation may require publication of annual compensation, for instance, individuals employed in the private sector expect that the amount of their income need be divulged only to the taxing authorities, and to them with an expectation of confidentiality.' "
530 So.2d at 788 (quoting DeMasi v. Weiss, 669 F.2d 114, 119 (3d Cir. 1982) ).
The Court in Morris noted that the defendants had access to other information they could use to demonstrate bias on the part of the expert witnesses:
"Petitioner points out that [the defendants] took the depositions of both expert witnesses and had ample opportunities to delve into any subject matters concerning the case and that the [defendants] have at their disposal relevant information concerning both expert witnesses with respect to their hourly rates for testifying in cases, the number and names of states in which they have testified as experts, the number of depositions given as experts, and the approximate percentage of income received from medical-legal cases."
*540 530 So.2d at 787. The Court concluded that the prejudice to the witnesses outweighed the probative value of the records sought:
"After weighing the liberal policy of the discovery rules against the emerging qualified privilege disfavoring disclosure of one's income tax records, we hold that petitioner's expert witnesses are not required to produce their income tax records.
"The incremental value that such information would provide respondent for purposes of showing bias is substantially outweighed by the prejudice that would be imposed on a person not a party to the proceedings, and involving an issue that is not controlling. In essence, to require a non-party witness to produce all of his income tax records for nine years preceding trial would clearly be more prejudicial than probative."
530 So.2d at 789.[2] Accordingly, the Court issued a writ of mandamus and directed the trial court "to vacate the order compelling plaintiff's expert witnesses to produce their personal financial records and income tax returns for nine years preceding the date of trial." Id. Relying on Morris, the Court in Ex parte Alabama State University, 553 So.2d 561 (Ala. 1989), issued a writ of mandamus and directed the trial court in that case to vacate an order compelling an official of Alabama State University, who had been sued in his official capacity, to produce personal tax returns and records relating to real property he owned. In issuing the writ, this Court noted that "[n]othing is found in the allegations of the complaint or in the depositions of the plaintiffs that could be interpreted to make [the official's] personal income or property records an issue." 553 So.2d at 562. In the present case, AAS asserts that "Paul's personal financial documents are wholly irrelevant and immaterial to the claims at issue."
Stewart and Cargile point to Rule 26(b), Ala. R. Civ. P., which "contemplates a broad right of discovery" and dictates that "[d]iscovery should be permitted if there is any likelihood that the information sought will aid the party seeking discovery in the pursuit of his claim or defense." Exparte AMI W. Alabama Gen. Hosp., 582 So.2d 484, 485 (Ala. 1991). Stewart and Cargile point out that the primary issue in this case is who holds superior rights in the vehicle. They assert that AAS claims that it holds superior rights based on its "funding of Pine City's floor planned vehicles and its security interest in the vehicles," and they claim that "an investigation into the source of a party's funding may lead to the discovery of important evidence." AAS, however, has not objected to producing financial records that will show the source of AAS's funding. Rather, it objects to the production of Paul's financial records that have nothing to do with her transactions with AAS.
Stewart and Cargile also rely on Paul's deposition testimony indicating that she lost access to records evidencing the loans and contributions she had made to AAS, which had been saved on her old personal computer, when she purchased and installed a new computer. As Stewart and Cargile assert, the transcript of the hearing on AAS's objection to the subpoenas and its motion for a protective order suggests that the trial court doubted the veracity of Paul's explanation, provided during her deposition, for losing the records. Stewart and Cargile argued to the trial court that Paul "was guilty of spoliation" and that, therefore, "her personal records [were] discoverable." This Court, however, fails to *541 see how Paul's alleged concealment or disposal of records, even if established, makes her personal financial information, unrelated to loans and contributions to AAS, relevant to the claims in the present case.
Stewart and Cargile also point to precedent establishing the general proposition that "[w]hen a plaintiff has alleged fraud, discovery must necessarily be broader than in other cases; this is because of the heavy burden of proof imposed on one alleging fraud." Ex parte Horton, 711 So.2d 979, 983 (Ala. 1998). That precedent suggests that, in a fraud case, broad discovery can lead to the uncovering of multiple instances of similar fraudulent conduct on a defendant's part, which might "show the existence of a plan or scheme, motive, or intent on the part of a defendant." Id. In the present case, however, Stewart and Cargile have not made fraud allegations against AAS that would justify requiring the production of Paul's personal financial records, unrelated to her transactions with AAS. We disagree with Stewart and Cargile's position that, "[i]n effect, the suspicious nature of Ms. Paul's loss of all AAS loan data stored on her computer gives rise to a broad investigatory right on behalf of Stewart and Cargile to conduct discovery into all of Ms. Paul's personal financial documentation for the past five years."
Stewart and Cargile also suggest that AAS's corporate veil might be pierced, and Paul held personally liable, because, they suggest, "AAS is merely a pass-through or shell for Ms. Paul personally." Along similar lines, they also point out that "[a] corporate agent who personally participates, albeit in his or her capacity as such agent, in a tort is personally liable for the tort." Sieber v. Campbell, 810 So.2d 641, 645 (Ala. 2001). Ignoring the fact that Paul has not been sued, Stewart and Cargile's rationale for possibly holding her personally liable would be supported by records showing transactions between Paul and AAS or, possibly, transactions between Paul and Pine City, not Paul's personal financial information unrelated to those transactions.
Finally, Stewart and Cargile assert that there is no bright-line constitutional, statutory, or common-law privilege protecting a person's financial information in the hands of third parties. Illustrating that point, they point to federal law that, they claim, allows financial institutions to "disclose a customer's non-public personal financial information in order to comply with a discovery request." That there may not exist a bright-line privilege to refuse to disclose such information, however, does not abrogate this Court's holding in Morris.
We issue the writ of mandamus and direct the trial court to vacate its orders denying AAS's objection to the proposed subpoenas and its motion for a protective order and to issue an order granting its motion, limiting the scope of discovery to transactions between Paul and AAS.
PETITION GRANTED; WRIT ISSUED.
Stuart, C.J., and Bolin, Parker, Shaw, Main, Wise, and Bryan, JJ., concur.

The materials before this Court do not suggest that Paul herself filed an objection to the proposed subpoenas, and she has not joined in AAS's mandamus petition. Although Stewart and Cargile argue that the records in question are relevant and that Paul has no expectation of privacy in them, we have not been presented with persuasive argument that AAS, as a party, simply does not have "standing" to challenge the issuance of the nonparty subpoenas based on Paul's alleged privacy interests and the alleged irrelevancy of the information sought. See generally Rule 45(a)(3)(B), Ala. R. Civ. P. ("Any person or party may serve an objection to the issuance of a subpoena for production, inspection, copying, testing or sampling ...."); Rule 26(c), Ala. R. Civ. P. ("Upon motion by a party or by the person from whom discovery is sought, ... the court ... may make any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ...."); and Ex parte Morris, 530 So.2d 785 (Ala. 1988) (considering, and agreeing with, a party's argument that an order compelling that party's expert witnesses to produce tax records and other personal financial information impermissibly called for the production of information of limited probative value and invaded the nonparty witnesses' privacy interests). But see United States v. Idema, 118 F. App'x. 740, 744 (4th Cir. 2005) (not selected for publication in the Federal Reporter) ("Ordinarily, a party does not have standing to challenge a subpoena issued to a nonparty unless the party claims some personal right or privilege in the information sought by the subpoena.").

The Court was careful to note, however, that it was not "unmindful that such records would be discoverable in appropriate circumstances." Morris, 530 So.2d at 789.