603 So.2d 637 (1992)
Irene Weloy CRANDALL and Jack W. Barrett, M.D., Petitioners,
v.
Barbara MICHAUD and John Michaud, her husband, Respondents.
No. 92-0788.
District Court of Appeal of Florida, Fourth District.
August 5, 1992.
Michele I. Nelson of Paxton, Crow, Bragg, Smith & Keyser, P.A., West Palm Beach, and Blake & Torres, Fort Pierce, for petitioners.
Jeffrey F. Mahl and Maureen M. Matheson of Reinman, Harrell, Graham, Mitchell & Wattwood, P.A., Melbourne, for respondents.
PER CURIAM.
Petitioners seeking certiorari are Irene W. Crandall, a defendant in the suit below, and Jack W. Barrett, M.D., a defense medical expert. The issue is whether the trial court departed from the essential requirements of law when it entered discovery orders as follows: (1) Directing the independent medical examiner to comply with a subpoena of reports on patients he has prepared for defense law firms or insurance companies in the past two years on which names of patients have been whited out, and directing respondents to pay in advance $500 for reasonable costs of complying with the subpoena; (2) denying the physician's motion for protective order, and (3) denying a motion for rehearing but making clear that the $500 required to be paid in advance is a deposit toward reasonable costs to be subsequently determined. We conclude that it did, grant the petition and quash the orders without prejudice to respondents' seeking alternative, less burdensome discovery tending to show the extent to which the physician performed independent medical examiner (IME) service for defense law firms and liability insurers.
The statement of the issue, above, summarizes much of what petitioners have made known to us about this case. The underlying suit is about injuries sustained in an auto accident. Dr. Jack W. Barrett was the IME retained by the defendant to examine Barbara Michaud. Michaud then *638 filed a notice of production from nonparty with an attached subpoena, directed at Dr. Barrett. The material sought to be produced was photocopies of any and all reports Dr. Barrett had made for insurance companies or defense law firms involving plaintiff medical examinations during the preceding two years. The subpoena requested the physician to white out patients' names contained in these reports.
In addition to filing motions for protective orders, Dr. Barrett's affidavit set forth the complicated nature of the imbedded tasks and their high cost, asserting that only he personally could pick out the patient files that matched the discovery specifications; that he would have to go through several hundred files; that he would spend more than forty hours doing this, and that his hourly rate is $200.
Michaud then filed a motion to compel and or for sanctions for Dr. Barrett's failure to comply with the subpoena. The motion states that without this information the plaintiff would be unduly prejudiced and unable effectively to present her case, but does not specify how the information sought is relevant or the nature of the prejudice of being denied the discovery sought.
The trial court entered orders denying both Crandall's and Barrett's motions for protective order. Dr. Barrett was directed to comply within fifteen days of the date of the order. Michaud was directed to pay $500 in advance toward reasonable costs of complying with the subpoena. Dr. Barrett and Crandall moved to stay the orders denying protection so that they could seek review by certiorari in this court. It was Dr. Barrett's estimate that the cost of compliance would be at least $4,600, as review of between 300 and 400 files would be involved, in addition to additional clerical help and copying costs.
In its new order, the trial court made clear that the $500 was an advance against a reasonable cost, and more would be assessed if costs exceeded that figure. The court did not award advance payment of the entire estimated cost and declined to enter a stay at that time, but indicated it would do so when furnished with a copy of the filed petition for certiorari. An order was entered substantially reflecting what was just stated.
The arguments petitioners raise in opposition to the discovery ordered by the trial court are as follows: The trial court departed from the essential requirements of law in requiring the subject production of nonparty medical records (A) because (1) such records are confidential and/or privileged, (2) have no relevance to the instant litigation, and (3) the production will be unduly burdensome and oppressive; and (B) because the court failed to require the plaintiff to post in advance the entire estimated cost of production, which Dr. Barrett averred is a minimum of $4,600.
Petitioners point out that a test balancing competing interests generally is applied to determine whether certain discovery should or should not be granted. See North Miami General Hosp. v. Royal Palm Beach Colony, Inc., 397 So.2d 1033 (Fla. 3d DCA 1981). The reasoning involved in Royal Palm Beach Colony incorporates the issue of burdensomeness, the issue of relevance, and the possibility of invading the privacy of the patients or the confidentiality of the patients' records. Another fairly recent case that must be considered, albeit ostensibly its balancing test is the same as that in Royal Palm Beach Colony, is Rasmussen v. South Florida Blood Service, Inc., 500 So.2d 533 (Fla. 1987).
Petitioners rely on Traveler's Indemnity Co. v. Salido, 354 So.2d 963 (Fla. 3d DCA 1978), and Argonaut Insurance Co. v. Peralta, 358 So.2d 232 (Fla. 3d DCA), cert. denied, 364 So.2d 889 (Fla. 1978). See also Fidelity & Cas. Co. of New York v. Lopez, 375 So.2d 59 (Fla. 4th DCA 1979), and Teperson v. Donato, 371 So.2d 703 (Fla. 3d DCA 1979).
Petitioners urge additionally that pursuant to section 455.241, Florida Statutes (1991), patient records may not be furnished to, and the medical condition of patients may not be discussed with, anyone but the patient, his legal representative, and other health care providers involved in *639 the treatment of the patients, except with either the express written authorization of the patients, or when done pursuant to rule 1.360 [sharing of medical reports between plaintiff and defendant where someone has been examined because his health condition has been placed in issue in the lawsuit]. One additional exception is as follows:
Such records may be furnished in any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or his legal representative by the party seeking such records.
§ 455.241(2), Fla. Stat. (1991). If the fact that the identity of the patient is concealed does not alter the operation of this statute, it would seem plausible to conclude that in the instant case there would need to have been notice to the patients or their lawyers before the information to be produced here could be produced.
Respondents urge that here the privacy interests of patients will be adequately protected by the white out of their identities and cite three cases of this court approving similar discovery: Ventimiglia v. Moffitt, 502 So.2d 14 (Fla. 4th DCA 1986) (copies of records of other similar patients treated by medical expert witness relevant, with confidentiality protected by deletion of patients' identities, where physician at least in part predicated his opinion and diagnosis in this patient's case on his experience with other patients); Amisub v. Kemper, 543 So.2d 470 (Fla. 4th DCA 1989) (court acted within its discretion, as did the court in Ventimiglia, when it permitted discovery, after deletion of patients' names, of relevant material in hospital records of other patients who underwent certain specified procedures on the same day as decedent); and McAdoo v. Ogden, 573 So.2d 1084 (Fla. 4th DCA 1991) (trial court's order to doctor to produce copies of bills sent defense attorneys or insurance companies for examinations performed on claimants upheld; doctor could white out patients' names to protect confidentiality; petitioner's burden did not outweigh desirability of providing trier of fact with relevant helpful information). See also Dollar General, Inc. v. DeAngelis, 590 So.2d 555, 556 (Fla. 3d DCA 1991).
We believe a distinction has to be drawn between cases like McAdoo where the information sought is merely records, of one kind or another, of payments to independent medical experts by insurers or defense law firms, and cases where discovery is sought of narrative medical reports on independent examinations conducted. The payment records would seem usually to be rather easy to locate, and relevant to the credibility of the physician as an expert witness; if a great amount of a defense medical expert's income comes from performance as a defense expert, the impartiality of his reports may be suspect. The relevance of the contents of medical records of other patients referred by insurer or law firm for examination by the IME, on the other hand, to the issue of the IME's credibility as an expert witness, would seem slight, based on reasoning similar to that in the malpractice suits: each case is different, and who is to say that the report or testimony in the instant case is inaccurate because other reports prepared by this IME are favorable to the defense?
If the object is merely to show how beholden the physician is to insurers and defense law firms because of the amount of business he receives from them, there are alternative ways of obtaining this kind of information without delving into medical records of other people. Taken at face value, section 455.241 also militates against this discovery, for the statute bars (with certain exceptions) furnishing a patient's medical records or discussing his medical condition; it does not seem to make a distinction if the identity of the patient is concealed.
Here, since the documents sought to be produced are not 1099 forms, as they have been in other cases, but narrative reports, the doctor's contention that there will be a need to go through numerous patient files in his office to find the required reports, after which the names will have to be concealed and a copy made; and that this will be very time consuming and costly, is plausible. Production may not be as expensive *640 as he has estimated, but it will be unduly burdensome in comparison with the benefit to the plaintiff that can be expected to result.
GLICKSTEIN, C.J., concurs.
STONE, J., concurs specially with opinion.
LETTS, J., dissents without opinion.
STONE, Judge, concurring specially.
I agree that the trial court departed from the essential requirements of law with respect to the privilege and privacy issues. However, I would emphasize that this certiorari relief is not founded on the contentions that production will be unduly burdensome or expensive or that there was any such departure as to the cost reimbursement provisions of the orders.