623 So.2d 815 (1993)
TREND SOUTH, INC., a Florida corporation, d/b/a Sugar's, and Richard Glatzer, M.D., Petitioners,
v.
Niurys ANTOMARCHY, Respondent.
No. 93-944.
District Court of Appeal of Florida, Third District.
August 31, 1993.
Parenti, Falk, Waas & Frazier and Gail Leverett, Miami, for petitioners.
Brumer, Cohen, Logan, Kandell & Kaufman and Cynthia Barnett Hibnick, Miami, for respondent.
Before FERGUSON, JORGENSON and GODERICH, JJ.
*816 PER CURIAM.
The petitioners, Trend South, Inc., d/b/a Sugar's [Trend South] and Richard Glatzer, M.D., seek review by petition for writ of common law certiorari of the trial court's order requiring Dr. Glatzer, a nonparty, to provide respondent's counsel with authorizations to obtain 1099 forms for the past three years directly from the Internal Revenue Service.
The respondent, Niurys Antomarchy, issued a subpoena duces tecum for deposition directing Dr. Glatzer to produce, in part, information regarding independent medical examinations which Dr. Glatzer had performed and "all federal income tax forms 1099 provided to Richard Glatzer, M.D. from any and all law firms or insurance companies from January 1, 1991 to the present date." In response to the subpoena, Trend South filed a motion for protective order alleging that the production of the information would be burdensome and costly. Attached to the motion was Dr. Glatzer's affidavit stating that as a result of how records were kept in his office, he could only obtain such information by looking through each and every patient file in his office. Additionally, Dr. Glatzer outlined the "exorbitant" costs involved in producing this information. Dr. Glatzer stated that he "would be unwilling to spend the many months needed working on this at nights or on weekends." Dr. Glatzer further asserted that the 1099 forms were destroyed by Hurricane Andrew. Moreover, during oral argument it was asserted that in order to obtain the information requested in the subpoena, Dr. Glatzer would have to close his office for several months and that production of the information would cost approximately $100,000.00.
The trial court ordered Dr. Glatzer to provide the respondent's attorney with an authorization allowing him to obtain three years of Dr. Glatzer's 1099 forms directly from the Internal Revenue Service. This petition for writ of certiorari follows.
The parties are in agreement that information regarding income generated by a physician's performance of independent medical examinations for insurance companies and law firms is relevant and discoverable to prove potential bias. McAdoo v. Ogden, 573 So.2d 1084 (Fla. 4th DCA 1991); Dollar General, Inc. v. Deangelis, 590 So.2d 555 (Fla. 3d DCA 1991). Under the facts of this case, we find that the trial court did not depart from the essential requirements of law. The affidavit which Dr. Glatzer filed in support of Trend South's motion for protective order had the effect of admitting that the information which the respondent sought could not be obtained from discovery procedures provided for by the Florida Rules of Civil Procedure. Moreover, Dr. Glatzer's affidavit established that there is no less burdensome method for obtaining the relevant information since the 1099 forms were destroyed by Hurricane Andrew.
Accordingly, we deny the petition. However, we order that the 1099 forms be sent directly to the trial court for an in camera inspection since the parties have acknowledged that the 1099 forms may contain information which may not be relevant to the issue of how much Dr. Glatzer has been paid by insurance companies and law firms for independent medical examinations.
FERGUSON and GODERICH, JJ., concur.
JORGENSON, Judge, dissenting.
I respectfully dissent.
By this petition for certiorari, we confront today the extent to which an independent medical expert must reveal personal data regarding the character of his medical practice and personal financial details which implicate privacy interests, as well as the outer bounds of good taste.
Of late, the Florida appellate courts have confronted this issue by holding that such materials are relevant to the issue of bias and, if not unduly burdensome, are discoverable. See e.g., Abdel-Fattah v. Taub, 617 So.2d 429 (Fla. 4th DCA 1993) (trial court ordered to determine reasonable cost for nonparty medical expert to compile information regarding defense-requested examinations done by him during past year); Bissell Bros., Inc. v. Fares, 611 So.2d 620 (Fla. 2d DCA 1993) (Internal Revenue Service 1099 *817 forms of independent medical examiners subject to discovery as reasonably calculated to lead to relevant evidence concerning bias); Young v. Santos, 611 So.2d 586 (Fla. 4th DCA 1993) (doctor ordered by trial court to produce copies of bills, checks, and payment records regarding medical exams done at request of insurance companies and law firms, as well as tax returns, for three-year period; doctor's overall income not discoverable and that other less intrusive means of discovering information should be explored first); Crandall v. Michaud, 603 So.2d 637 (Fla. 4th DCA 1992) (independent medical examiner not required to provide patient reports prepared for defense law firms or insurance agencies over past two years; 1099 tax forms or records of payments from insurers or defense law firms would be easier to locate and more relevant to issue of bias); Wood v. Tallahassee Memorial Regional Medical Ctr., Inc., 593 So.2d 1140 (Fla. 1st DCA) (trial court properly ordered independent medical examiners to produce for in camera inspection tax returns for previous five years to extent they reflected income from involvement in medical malpractice cases), rev. denied, 599 So.2d 1281 (Fla. 1992); Dollar General, Inc. v. Deangelis, 590 So.2d 555 (Fla. 3d DCA 1991) (1099 tax forms of defense medical expert discoverable if not unduly burdensome); McAdoo v. Ogden, 573 So.2d 1084 (Fla. 4th DCA 1991) (same); State Farm Mutual Auto. Ins. Co. v. Gray, 546 So.2d 36 (Fla. 3d DCA 1989) (same). Cf. Winn-Dixie Stores, Inc. v. Miles, 616 So.2d 1108 (Fla. 5th DCA 1993) (party's treating physician who was not expert witness not required to reveal whether significant portion of his income was derived from plaintiff's attorneys absent threshold showing of bias).
Because there is no showing upon this record that the expert in question is venal as that term is defined in State ex rel. Lichtor v. Clark, 845 S.W.2d 55 (Mo. App.W.D. 1992), I would grant certiorari and remand for further development of the witness's alleged bias before requiring the production of personal financial information.
In my view, this can only be accomplished by deposing the medical expert as suggested by Judge Warner in her special concurrence in Young v. Santos, 611 So.2d at 587-588, and not by the technique employed in this case, which was to issue a subpoena duces tecum together with a notice of deposition which required, among other things, to furnish
(1) any and all reports made for any insurance company or any defense law firm as a result of any medical examination of any plaintiff in Dade County, Florida, from January 1, 1991, to the present date;
(2) any and all copies of bills to the individual, law firm, or insurance company paying for the examinations and reports from January 1, 1991, to the present date;
(3) any and all Federal income tax forms 1099 from any and all law firms or insurance companies from January 1, 1991, to the present date.
The import of the trial court's order requires Dr. Glatzer to sign a release authorizing the Internal Revenue Service to release his Federal 1099 forms and send them directly to the trial court for an in camera review. Although such a procedure will, to some extent, protect the doctor's privacy interests, it is certainly extraordinary and does not conform to the Florida Rules of Discovery as I understand them. In sum, I would not permit detailed discovery of personal financial data of a non-party witness unless and until that witness has been deposed and appears to be less than forthcoming with respect to the character of his practice and the approximate amount of money he derives from rendering expert opinions in cases of this nature. Indeed, the Florida Supreme Court has indirectly approved of such a procedure in Henry v. State, 574 So.2d 66, 71 (Fla. 1991) (approving cross-examination of defense expert regarding character of his practice and percentage of cases where hired by public defender's office).
I would grant the petition for certiorari and deny discovery of personal financial details of a nonparty expert witness until after a proper deposition has been conducted and the witness has proved to be less than forthcoming.