644 So.2d 539 (1994)
Elisa SYKEN, Petitioner,
v.
Max ELKINS, et al., Respondents.
PLAZA OF the AMERICAS PART IV CONDOMINIUM ASSOCIATION, INC., and Ledford Gregory, M.D., Petitioners,
v.
Michael ROTH, Respondent.
Nos. 93-1299, 93-2317.
District Court of Appeal of Florida, Third District.
October 5, 1994.
*540 Clark, Sparkman, Robb & Nelson, and James T. Sparkman, Fort Lauderdale, for petitioner Syken.
Robbins & Reynolds and Robert A. Robbins, and Barbara Green, Miami, for respondents Elkins, et al.
Fleming, O'Bryan & Fleming, and Paul R. Regensdorf, Fort Lauderdale, for Florida Defense Lawyers Ass'n, as amicus curiae.
Roy D. Wasson, Miami, for Academy of Florida Trial Lawyers, as amicus curiae.
Adorno & Zeder and Raoul G. Cantero III and David Lawrence III, Miami, for petitioners Plaza of the Americas Part IV Condominium Ass'n, Inc. and Ledford Gregory, M.D.
Friend & Fleck and Richard A. Friend, South Miami, for respondent Roth.
*541 Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN, GODERICH and GREEN,[*] JJ.

EN BANC
NESBITT, Judge.
We entertain these petitions for common law certiorari, en banc, in order to harmonize the divergent opinions of this court involving the scope of discovery reasonably necessary to impeach the testimony of an opponent's expert medical witness. We have jurisdiction. Fla.R.App.P. 9.331.
In Syken v. Elkins, case 93-1299, petitioner, defendant below, seeks, through rehearing en banc, this court's review (by common law certiorari) of three trial court orders which require that defendant's expert witness physician: 1) produce material ordered in earlier cases by other trial judges; 2) begin keeping certain new records to be made available to plaintiff's counsel; and 3) produce certain financial data, including federal income tax 1099 forms. In Plaza v. Roth, case 93-2317, the petitioner, defendant below, and its expert witness physician, seek review of an order that the expert produce certain 1099's and P.A. federal income tax returns. For the reasons stated below, we grant the petitions and quash the orders under review.

The Facts in Syken v. Elkins
In February 1993, by subpoena duces tecum, counsel for Max Elkins, plaintiff in an automobile personal injury action, scheduled the deposition of the records custodian/bookkeeper of defendant Elisa Syken's orthopedic expert, Dr. Richard Glatzer. The information sought required documentation of income earned by the expert from independent medical examinations (IMEs) since January 1, 1990; the percentage of IME income relative to private patient income since January 1, 1990; the numbers of IME exams performed for insurance carriers and for defense attorneys since January 1, 1990; disclosure of the amount charged for IMEs, and review of the expert's medical records for the past twelve months; the number of impairment ratings given since January 1, 1990; and the number of court appearances and attorney conferences and relative charges since January 1990.
Defendant's counsel filed an objection and motion for protective order. The trial judge denied the motion and required the expert to set forth the cost of producing the above information. The initial affidavit of Dr. Glatzer was filed February 12, 1993. Thereafter, Elkins filed a motion to require Dr. Glatzer's bookkeeper to comply with the subpoena, and filed a response to the affidavit. In response to Elkins' motion, the trial court ordered Dr. Glatzer to appear for an evidentiary hearing. Prior to that hearing, on May 6, 1993, the record reveals that the doctor submitted a notarized affidavit stating, in part:
5. Finally, at the request of defense counsel, I have examined my calendar for last week and this week in order to come to a reasonable approximation of the number of IME's I do in a year. Last week, I worked 4 days and saw 56 patients, of which only 3 were for the purpose of performing IME's. This week I am working only 2 days, but I am seeing 36 patients, of which 6 are for the purpose of performing IME's. Presently, I work 4 days per week. Extrapolating this information, I believe it is reasonable to conclude that I see, on average 15.33 patients per day, of which 1.5 patients are seen for performing IME's. I work approximately 48 weeks per year. As such, I believe it is reasonable to estimate that I see 2944 patients per year, of which 288 are seen for IME's. My average charge for an IME, including performing and reviewing x-rays is $500. As such a reasonable estimate of my P.A.'s income from IME's is $144,000 per year. Additionally, I attend court approximately 10-12 times per year at a rate of $500 per hour and I give approximately 5-10 depositions per year at a rate of $450 per hour.
Dr. Glatzer was questioned by the trial judge and Elkins' attorney. Two interested attorneys, involved in similar discovery pursuits *542 on separate personal injury cases, were allowed to assist. Dr. Glatzer was asked about the contents of his affidavit in the present case as well as a second similar affidavit.
Dr. Glatzer explained that his patient files are kept alphabetically and not chronologically, and that the estimated 15,000 patient files covered 25 years of practice in Dade County. The doctor expressed concern that compliance with the subpoena would require him to close his medical practice, due to the fact that his office personnel could not perform the task of gathering the requested materials during regular working hours in light of their duties in running his medical practice. Further, the doctor claimed that 1099 forms are not probative of medical legal charges because they do not differentiate between such charges and private patient charges. At the conclusion of the hearing, the trial judge issued the three orders appealed herein, in sum requiring the compilation of reports from the doctor's files, the implementation of new procedures for recording IME's and creation of new documents evidencing time spent on IME's, and production of 1099 tax forms for the last three years.[1]

*543 The Facts in Plaza v. Roth

Michael Roth, plaintiff below, alleged he was injured when the ceiling in his apartment fell on him. Roth sued Plaza of the Americas Part IV Condominium Association, Inc. (Plaza), the association which owns the building's common areas. Plaza hired Ledford Gregory, M.D. to conduct an IME of Roth. Thereafter, through interrogatories, Roth requested the identity of every person Dr. Gregory had examined at the request of Plaza's counsel. Plaza objected, and Roth moved to compel a response. The trial judge ordered Plaza to procure from Dr. Gregory an affidavit identifying every person examined by Dr. Gregory, or about whom Dr. Gregory had testified, pursuant to an authorization from Plaza's law firm. Subsequently, Roth issued a subpoena duces tecum to Dr. Gregory requesting, among other things, copies of
all bills issued by [Dr. Gregory] as a defense expert examiner to any insurance company or law firm during a certain period; and
all journals, ledgers, and 1099 forms pertaining to payments received by [Dr. Gregory] during a certain period, for examinations performed at the request of any insurance company or law firm.
Plaza objected to the request. The trial judge denied the objection.
In response to the subpoena, Dr. Gregory filed his affidavit, which stated that his office did not segregate files according to whether the patient was seen for an IME, and that his office maintains no central file or computer program from which the requested information could readily be retrieved. According to the affidavit, all the doctor's office files would have to be reviewed in order to determine which patients were given IMEs, and which patients were referred by Plaza's law firm, requiring "great amounts of money and time." He also stated in the affidavit that he did not keep his Internal Revenue Service 1099 forms. Roth filed a motion for contempt or sanctions.
After a hearing, the trial judge issued the order, reproduced in part below, from which Dr. Gregory seeks review.
A. Dr. Ledford Gregory is to sign a release for 1099 forms which is to be furnished by the Plaintiff and that will be sent to the IRS. Further, Ledford Gregory, M.D., P.A., shall produce its federal income tax returns for the years 1990, 1991 and 1992, to counsel for the plaintiff. Dr. Gregory is to produce the documents within ten (10) days from the date of this hearing.

Analysis
The issue in these cases is whether the trial courts' orders depart from the essential requirements of law, and will cause material injury to petitioners for which they have no adequate remedy by appeal. Abdel-Fattah v. Taub, 617 So.2d 429, 430 (Fla. 4th DCA 1993).
Litigants attempting to demonstrate the bias of an expert witness physician have commonly asserted that they are entitled to discovery of basically two types. First, as in Syken, litigants have sought direct access to the doctor's office files in order to conduct some sort of "audit" so as to obtain an exact count of the number of IMEs the doctor performs each year, and then to compare that number with the total number of patients seen. Second, as in both Syken and Plaza, litigants have attempted to obtain access to the doctor's financial information so as to come up with exact income figures which can be presented to the jury.
*544 Florida Rule of Civil Procedure 1.280 allows for discovery of any matter, not privileged, that is relevant to the subject matter of the action. The scope of this rule, while recognized as being broad, Argonaut Ins. Co. v. Peralta, 358 So.2d 232 (Fla. 3d DCA), cert. denied, 364 So.2d 889 (Fla. 1978), is not without limitation. First, as the rule indicates, irrelevant and privileged matter is not subject to discovery. Fla.R.Civ.P. 1.280(b)(1). Second, the discovery of relevant, non-privileged information may be limited or prohibited in order to prevent annoyance, embarrassment, oppression or undue burden or expense. Fla.R.Civ.P. 1.280(c); 1.410(b), (d)(1); South Florida Blood Service, Inc. v. Rasmussen, 467 So.2d 798 (Fla. 3d DCA 1985), approved, 500 So.2d 533 (Fla. 1987); Dade County Medical Ass'n v. Hlis, 372 So.2d 117, 121 (Fla. 3d DCA 1979). The cases before us deal with this second limitation on discovery. As observed in Rasmussen, the discovery rules are enunciated pursuant to the supreme court's rule making authority under article V, section 2(a) of the Florida Constitution, granting courts the authority to control discovery in all aspects. Springer v. Greer, 341 So.2d 212, 214 (Fla. 4th DCA 1976), appeal dismissed, 351 So.2d 406 (Fla. 1977).
If a person seeking to prevent discovery establishes good cause, a court may make those orders necessary to protect the interests set out in the rules. Included in the enumerated methods at the court's disposal under Rule 1.280(c) are the following:
(1) that the discovery not be had;
(2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;
(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
(4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters;... .
In deciding whether good cause has been shown, it is necessary to balance the opposing interests that would be served by the granting or denying of discovery. Rasmussen, 467 So.2d at 801; Hlis, 372 So.2d at 121; see also Lukaszewicz v. Ortho Pharmaceutical Corp., 90 F.R.D. 708 (E.D.Wis. 1981); Richards of Rockford, Inc. v. Pacific Gas & Elec. Co., 71 F.R.D. 388 (N.D.Cal. 1976). In the context of medical expert witnesses, courts in Florida have long held that the trial judge must balance the competing interests of the relevancy of the discovery information sought as impeachment information as against the burdensomeness of its production. Abdel-Fattah, 617 So.2d at 430; Wood v. Tallahassee Mem'l Regional Med. Ctr., Inc., 593 So.2d 1140 (Fla. 1st DCA), review denied, 599 So.2d 1281 (Fla. 1992); McAdoo v. Ogden, 573 So.2d 1084 (Fla. 4th DCA 1991); North Miami General Hospital v. Royal Palm Beach Colony, Inc., 397 So.2d 1033 (Fla. 3d DCA 1981).
Upon en banc consideration, we decide that in order to demonstrate the probability of bias, it is sufficient for a doctor to be asked to give an approximate estimate for IMEs and total patients seen in a year. The figures given need only be an honest estimate, and do not have to be an exact number. We find no sound reason to require disclosure of exact income figures. The doctor should not be required to disclose the amounts of money he or she earns from expert witness work, or disclose their total income. Similarly, the ordered production of income tax returns or Form 1099's do no more than create the danger of exactly those pitfalls outlined in Rule 1.280(c), and have limited probative value.
We are aware that our analysis conflicts with certain pronouncements of this court and that of other districts on this issue.[2] *545 Nonetheless, we adopt the reasoning of Chief Judge Schwartz in LeJeune v. Aikin, 624 So.2d 788, 789 (Schwartz, C.J., specially concurring) (Fla. 3d DCA 1993) and Judge Jorgenson in Trend South, Inc. v. Antomarchy, 623 So.2d 815, 186 (Fla. 3d DCA) (Jorgenson, J., dissenting), review denied, 630 So.2d 1103 (Fla. 1993), and conclude that decisions in this field have gone too far in permitting burdensome inquiry into the financial affairs of physicians, providing information which "serves only to emphasize in unnecessary detail that which would be apparent to the jury on the simplest cross-examination: that certain doctors are consistently chosen by a particular side in personal injury cases to testify on its respective behalf."[3]LeJeune, 624 So.2d at 790 (Schwartz, C.J., specially concurring; see Young v. Santos, 611 So.2d 586, 587-88 (Fla. 4th DCA 1993) (Warner, J., concurring).
The production of the information ordered in the cases before us causes annoyance and embarrassment, while providing little useful information. In Syken, the court ordered additional discovery which, in light of the doctor's affidavit, is only duplicative, annoying and oppressive. In Plaza, the information necessary to demonstrate the basis for a claim of bias is most likely readily available through oral or written deposition without intrusive and improper examination of the doctor's 1099 forms and federal income tax returns. The least burdensome route of discovery, through oral or written deposition, was simply not followed.
A review of decisions of other jurisdictions supports our conclusion. In Ex parte Morris, 530 So.2d 785, 787 (Ala. 1988), the Alabama Supreme Court reviewed an order compelling certain expert witnesses to produce their income tax records and other information regarding their sources of income. There, reversing the trial court's order, the court concluded that while the old cry of "fishing expedition" does not preclude inquiry into the facts underlying an opponent's case, there comes a point where "[I]nstead of using rod and reel, or even a reasonably sized net, [the requesting party] would drain the pond and collect the fish from the bottom." Id. (citation omitted), citing In re: IBM Peripheral EDP Devices Antitrust Litigation, 77 F.R.D. 39, 42 (N.D.Cal. 1977).
In Jones v. Bordman, 243 Kan. 444, 759 P.2d 953 (1988), the court considered a request for, among other items, all medical reports made by the witness for the past six years and the witness' income tax returns. The Kansas court held that where the sole purpose of the discovery request was to obtain evidence which could impeach the witness' veracity, the information fell outside the scope of permissible discovery, particularly as plaintiffs could have obtained needed evidence sought through other less obtrusive means. Likewise, in Mohn v. Hahnemann Medical College & Hosp., 357 Pa.Super. 173, 515 A.2d 920, 924 (1986), appeal discontinued, 515 Pa. 582, 527 A.2d 542 (1987), the court held that requiring an expert to "lift his visor so that the jury could see who he was, what he represented, and what interest, if any, he had in the results of the trial so that the jury could appraise his credibility" did *546 not encompass "the emptying of one's pockets and turning them inside out so that one's financial worth can be open to scrutiny." Id. (citation omitted).
Also, in Russell v. Young, 452 S.W.2d 434 (Tex. 1970), the Texas court held that no discovery would be had, for the purposes of impeachment only, of financial and accounting records of a physician who was not a party to suit but who had treated claimant, and was scheduled to testify during trial as a medical expert for claimant, where insurer sought discovery of such records solely for the purpose of showing the physician's alleged bias. Additionally, supporting our conclusion are statements made in Allen v. Superior Court, 151 Cal. App.3d 447, 198 Cal. Rptr. 737 (1984) where a California court held that a trial court abused its discretion in requiring a defense medical expert witness to produce documents showing the extent of his practice for the defense and for insurance companies over the past five years without a showing that plaintiff's object could not be accomplished through less intrusive means. We conclude these cases support the guidelines outlined below.

Guidelines
For the foregoing reasons, discovery of an opposing medical expert for impeachment is limited by the following criteria:
1. The medical expert may be deposed either orally or by written deposition.
2. The expert may be asked as to the pending case, what he or she has been hired to do and what the compensation is to be.
3. The expert may be asked what expert work he or she generally does. Is the work performed for the plaintiffs, defendants, or some percentage of each?[4]
4. The expert may be asked to give an approximation of the portion of their professional time or work devoted to service as an expert. This can be a fair estimate of some reasonable and truthful component of that work, such as hours expended, or percentage of income earned from that source, or the approximate number of IME's that he or she performs in one year. The expert need not answer how much money he or she earns as an expert or how much the expert's total annual income is.
5. The expert may be required to identify specifically each case in which he or she has actually testified, whether by deposition or at trial, going back a reasonable period of time, which is normally three years. A longer period of time may be inquired into under some circumstances.[5]
6. The production of the expert's business records, files, and 1099's may be ordered produced only upon the most unusual or compelling circumstance.
7. The patient's privacy must be observed.[6]
8. An expert may not be compelled to compile or produce nonexistent documents.[7]

The Antidote
We have adopted the foregoing criteria based upon the rules of discovery and circumstances portrayed. We have done so in an effort to prevent the annoyance, embarrassment, oppression, undue burden, or expense, *547 claimed on behalf of medical experts. Within the limits of permitted discovery, medical experts are obligated to testify on a reasonable basis, truthfully, fully and freely. When it is disclosed or made apparent to the trial court that such a witness has falsified, misrepresented, or obfuscated the required data, the aggrieved party may move to exclude the witness from testifying or move to strike that witness's testimony and, or further, move for the imposition of costs and attorney's fees in gathering the information necessary to expose the miscreant expert.
These remedies, available at the trial judge's discretion, place trial counsel on notice to only engage reputable physicians. The exclusion or striking of an expert's testimony may result in the offending party being left with no expert testimony at trial. This is particularly so when the exclusion or striking occurs past the cut-off period for exchange of witnesses under a pretrial order. Of course, trial judges have discretion to vary the guidelines where appropriate and to impose less severe sanctions where warranted.

Conclusion
The data suggested by our guidelines will normally be sufficient to show the jury the expert's background and orientation. With this information, the opponent may, even with minimal cross-examination, make perfectly clear to a jury that a defense doctor testifies as a defense doctor, and plaintiff's doctor testifies as a plaintiff's doctor, and that each may spend considerable time doing just that.
These two cases, at different ends of the spectrum, demonstrate the problem we have addressed herein, the attempt by litigators to demonstrate the possibility of a medical expert's bias through "overkill discovery," to prove a point easily demonstrable by less burdensome and invasive means.
In Plaza, the trial judge's order of burdensome and intrusive production of documentary evidence was made before the expert was ever deposed. In Syken, with an affidavit clearly evidencing the probability of bias,[8] and with the doctor, at deposition, affirming the information produced in his affidavit, the trial judge nonetheless ordered massive documentary production, including the creation of new documents. Not only is the information sought and the manner in which it has been requested cumulative and duplicative of information easily available upon rudimentary written or oral deposition, but also so burdensome as to create the possibility of a chilling effect on litigants' ability to find experts to testify as witnesses.
By this opinion, we recede from all conflicting pronouncements or statements in the earlier decisions of this court. Also, while in the instant case the discovery orders that we conclude were overburdensome were made in response to requests by plaintiffs' counsel, the statements made herein clearly apply equally to requests by defense counsel of plaintiffs' medical experts.
Accordingly, for the foregoing reasons, the petitions for a writ of common law certiorari are granted and the orders under review are quashed.
NOTES
[*] Judge Green did not participate in oral argument.
[1] The orders are reproduced below to demonstrate their burdensome nature. In the first order, the trial judge took judicial notice of two earlier orders, one by Judge Klein, in Cabin v. State Farm, et al., one by Judge Goldman, in Niurys Antomarchy v. Trend South, Inc., and two previous cases in which Dr. Glatzer has been the subject, State Farm Mutual Auto. Ins. Co. v. Gray, 546 So.2d 36 (Fla. 3d DCA 1989) and Dollar General, Inc. v. Deangelis, 590 So.2d 555 (Fla. 3d DCA 1991). The trial judge then announced that she found it "inconceivable that Dr. Glatzer has no idea of the approximate amount of money he makes performing IME's, or alternatively, that there is no reasonable means for him to provide such information without undue expense or hardship." The judge thereafter ordered:

1. That Dr. Richard Glatzer shall procure a copy of a complete and accurate list of his billings for his IME services performed since November 23, 1992, the date of Judge Edward Klein's aforementioned Order which required him to keep such records, including the number of IME's, the amount he has been paid for same, the amount he has been paid for courtroom and deposition testimony pertaining to said IME's, and by whom such payments were made. Dr. Glatzer shall produce these records within (7) working days from the date of this hearing. Plaintiffs shall send to Dr. Glatzer the sum of $5.00 for the cost of copying such list.
2. That in view of Judge Murray Goldman's recent Order requiring Dr. Glatzer to produce his 1099's, Dr. Glatzer shall have 10 days from the date of this hearing to produce his 1099's for the last three years that reflect in whole or in part income derived from IME work or, alternatively, to provide Plaintiffs' counsel with an authorization to obtain said 1099's directly from the Internal Revenue Service or from the payor insurance carriers.
3. That should Dr. Glatzer fail to comply with this Order, he shall be stricken as an expert witness in this case.
Also on that date, the trial court issued an omnibus order incorporating the findings of the order reproduced in part above and additionally ordering:
2. If Dr. Glatzer chooses to offer his services as an IME physician and intends to testify and appear as a defense expert witness regarding any IME performed by him on any case whatsoever before this Court, then he shall be required to maintain complete and accurate records, commencing from November 23, 1992, the date of Judge Edward Klein's Order in the case of Cabin v. State Farm Fire And Casualty Company, et al., Dade County Circuit Court Case No. 91-48437(24), of the following information:
a. A complete and accurate listing of each and every IME performed, giving the date of each service performed in connection with the IME.
b. A complete and accurate account of every dollar billed for IME work, giving a breakdown of all charges, including the charge per hour, the number of hours spent and billed in each case. This record shall include the charge for each IME examination, reports, x-rays, medical records review and all testimony arising out of the IME, as well as any transportation charges.
c. A complete and accurate list of every party billed for such IME services and testimony, specifying in each case whether the money was paid by the defendant, the defense lawyer, the defendant's insurer, or by some other person or entity.
d. Each and every 1099 which reflects, in whole or in part, payment for any IME work or testimony arising therefrom.
3. As long as Dr. Glatzer continues to offer his services as an IME physician and serve as a defense expert witness on IME's, he shall continue to maintain the aforesaid information in his office and to have it available for inspection and copying by any interested party or entity. This Order extends into the future, beyond the duration of this particular case.
4. Should Dr. Glatzer fail to comply with this Order, he shall be precluded from serving as a defense IME expert in any cause before this Court.
Five days later, the trial court noted its two earlier orders and then concluded that "in an abundance of caution" it was further ordered:
1. That within 20 days from the date of this Order, the Defendant's attorneys, Clark, Sparkman, Robb & Nelson f/k/a/ Barnett, Clark & Barnard, shall produce any and all 1099's which said law firm issued to Dr. Richard Glatzer for the past thee years reflecting income, in whole or in part, derived from services performed as an IME physician and for any testimony arising therefrom.
2. That within 20 days from the date of this Order, the Defendant's attorneys, Clark, Sparkman, Robb & Nelson f/k/a Barnett, Clark & Barnard, shall obtain and produce from the Defendant's insurer, State Farm, any and all 1099's which said insurance company issued to Dr. Richard Glatzer for the past three years reflecting income, in whole or in part, derived from services performed as an IME physician and for any testimony arising therefrom.
[2] See LeJeune v. Aikin, 623 So.2d 815, 816 (Fla. 3d DCA), review denied, 630 So.2d 1103 (Fla. 1993) (Jorgenson dissenting), citing Abdel-Fattah v. Taub, 617 So.2d 429 (Fla. 4th DCA 1993); (trial court ordered to determine reasonable cost for nonparty medical expert to compile information regarding defense-requested examinations done by him during past year); Bissell Bros., Inc. v. Fares, 611 So.2d 620 (Fla. 2d DCA 1993) (Internal Revenue Service 1099 forms of independent medical examiners subject to discovery as reasonably calculated to lead to relevant evidence concerning bias); Young v. Santos, 611 So.2d 586 (Fla. 4th DCA 1993) (doctor ordered by trial court to produce copies of bills, checks, and payment records regarding medical exams done at request of insurance companies and law firms, as well as tax returns, for three-year period; doctor's overall income not discoverable and that other less intrusive means of discovering information should be explored first); Crandall v. Michaud, 603 So.2d 637 (Fla. 4th DCA 1992) (independent medical examiner not required to provide patient reports prepared for defense law firms or insurance agencies over past two years; 1099 tax forms or records of payments from insurers or defense law firms would be easier to locate and more relevant to issue of bias); Wood v. Tallahassee Memorial Regional Medical Ctr., Inc., 593 So.2d 1140 (Fla. 1st DCA 1992) (trial court properly ordered independent medical examiners to produce for in camera inspection tax returns for previous five years to extent they reflected income from involvement in medical malpractice cases), rev. denied, 599 So.2d 1281 (Fla. 1992); Dollar General, Inc. v. Deangelis, 590 So.2d 555 (Fla. 3d DCA 1991) (1099 tax forms of defense medical expert discoverable if not unduly burdensome); McAdoo v. Ogden, 573 So.2d 1084 (Fla. 4th DCA 1991) (same); State Farm Mutual Auto. Ins. Co. v. Gray, 546 So.2d 36 (Fla. 3d DCA 1989) (same).
[3] A study conducted by the ABA section on Litigation's Jury Comprehension Committee noted that jurors easily identified "hired guns" and discounted their testimony accordingly. Mayne, Jury Comprehension on Study Completed, LITIGATION NEWS 1 (Feb. 1990); See also R.J. Gerber, Victory vs. Truth: The Adversary System and Its Ethics, 19 Ariz.St.L.J. 3, 11 (1987) ("Because people perceive the expert witness ... as capable of being bought and sold, these experts testify with an aura of disrepute.").
[4] A case giving an example of impeachment of an expert along these lines is Henry v. State, 574 So.2d 66, 71 (Fla. 1991).
[5] The reason for allowing the particularized identification of cases where the doctor testifies is so that the plaintiff can see how the doctor has testified in past cases and see whether he is taking inconsistent positions. See Richmond v. American Honda Motor Co., Inc., 571 So.2d 491 (Fla. 2d DCA 1990) (Motorcycle manufacturer, as defendant in products liability action brought by injured passenger was entitled to discover through requests for admissions, substantive testimony that passenger's experts had given testimony in previous cases.)
[6] An audit of an IME physician's patient files without notice to or consent of the patients involved violates the statutory confidentiality of said files. § 455.241(2), Fla. Stat. (1993); see Crandall v. Michaud, 603 So.2d 637 (Fla. 4th DCA 1992).
[7] Clearly, a trial court has no authority to order the discovery of nonexistent records. Bissell Bros. v. Fares, 611 So.2d 620 (Fla. 2d DCA 1993); Balzebre v. Anderson, 294 So.2d 701 (Fla. 3d DCA 1974).
[8] Here, the disclosures made by Dr. Glatzer, in fact, exceed that which we have outlined. Dr. Glatzer gave an estimate for the total number of IME's performed each year, compared with the total patient load, and also provided an estimate for the number of times he testifies each year at deposition and at trial. Not required under our analysis but also provided, was an estimate of the amount of money that he makes each year from IME's. (If asked by the plaintiff, of course, Dr. Glatzer may be required to identify specifically the cases in which he has testified, going back a reasonable period of time.)