SHEPHERD, J.
 

 Donna Howard Buck, the defendant in a personal injury action pending below, seeks certiorari relief from a trial court order overruling her objection to a request for production propounded to her by the plaintiff, Josee Chin, requesting that her expert defense medical witness, Dr. Stephen Wender, “produce all 1099’s or equivalent documents for the calendar year 2007 which evidence all IME related income for that year.” We conclude the order constitutes a departure from the essential requirements of law for which there is no adequate remedy on appeal, and quash the order under review.
 

 Setting aside the interesting question whether the order infringes upon Dr. Wender’s due process rights,
 
 see Daniel v. Garrison,
 
 894 So.2d 308, 308 (Fla. 3d DCA 2005) (finding “without prior notice and without the benefit of subpoena,” the lower court violated petitioner’s due process rights) (quoting
 
 Times Publ’g Co. v. Burke,
 
 375 So.2d 297, 299 (Fla. 2d DCA 1979)), it is clear that the record in this case does not support the production of evidence of expert bias beyond the parameters carefully established by Florida Rule of Civil Procedure 1.280(b)(4)(A)(iii). Initially conceived in an en banc decision of this court,
 
 see Syken v. Elkins,
 
 644 So.2d 539 (Fla. 3d DCA 1994), approved by the Florida Supreme Court,
 
 see Elkins v. Syken,
 
 672 So.2d 517 (Fla.1996), and ordered into the Florida Rules of Civil Procedure, the rule reads as follows:
 

 (Hi) A party may obtain the following discovery regarding any person disclosed by interrogatories or otherwise as a person expected to be called as an expert witness at trial:
 

 1. The scope of employment in the pending case and the compensation for such service.
 

 2. The expert’s general litigation experience, including the percentage of work performed for plaintiffs and defendants.
 

 3. The identity of other cases, within a reasonable time period, in which the expert has testified by deposition or at trial.
 

 
 *1134
 
 4. An approximation of the portion of the expert’s involvement as an expert witness, which may be based on the number of hours, percentage of hours, or percentage of earned income derived from serving as an expert witness; however, the expert shall not be required to disclose his or her earnings as an expert witness or income derived from other services.
 

 See
 
 Fla. R. Civ. P. 1.280(b)(4)(A)(iii). Beyond these limits, production by an expert witness of financial and business records may be compelled “only under the most unusual or compelling circumstances”,
 
 id.,
 
 ordinarily only “[w]hen it is disclosed or made apparent to the trial court that [the expert] witness has falsified, misrepresented, or obfuscated the required data.”
 
 Elkins,
 
 672 So.2d at 521 (quoting
 
 Syken,
 
 644 So.2d at 547).
 

 The “compelling circumstance” advanced to support the extended discovery in this case is an inconsistency between Dr. Wen-der’s deposition testimony that he makes approximately $500,000 per year from his “litigation practice” divided equally between work for plaintiffs and defendants, and interrogatory answers sworn by Buck’s counsel that during the last three years, Dr. Wender was paid $339,697.99, $350,762.67, and $331,711.38 by State Farm Insurance Company alone.
 

 Although this data indicates Dr. Wender spent close to two-thirds of his litigation practice seeing patients referred through just one liability insurer, it is our judgment that Dr. Wender’s testimonial approximation when read against the sworn interrogatory answers of counsel stating that his litigation practice is divided “50% for the Plaintiff and 50% for Defendant” and reciting payment specifics received in the comparative serenity of a lawyer’s office does not rise to the level of “falsification], misrepresentation] or “obfuscation]” ordinarily required to satisfy the need for intrusion into an expert witness’ financial or business records.
 

 The discovery obtained by plaintiffs counsel thus far indicates that Dr. Wender has received over one million dollars from a single defense source. This fact alone should be sufficient to allow the plaintiff to argue that Dr. Wender might be more likely to testify favorably on behalf of one side rather than another, and for jurors to get the point.
 
 See Syken,
 
 644 So.2d at 545 n. 3 (citing Mayne, Jury Comprehension on Study Completed, LITIGATION NEWS 1 (Feb. 1990) (recognizing that jurors easily identified “hired guns” and discounted their testimony accordingly); R.J. Gerber,
 
 Victory v. Truth: The Adversary System and Its Ethics,
 
 19 Ariz. St. L.J. 3, 11 (1987) (“Because people perceive the expert witness ... as capable of being bought and sold, these experts testify with an aura of disrepute.”)).
 

 Petition granted; order quashed.