SALTER, J.
State Farm Mutual Automobile Insurance Company appeals an order assessing attorney’s fees against it as a sanction for a mistrial caused by its expert witness, Dr. Stephen Wender. Finding that there is no evidence, and no finding, of bad faith on the part of State Farm itself, we reverse the order. We do so without prejudice, however, to the appellee’s right to seek the imposition of such a sanction against Dr. Wender personally.[1] In the event that such a motion is made after remand, Dr. Wender must be afforded an opportunity to present evidence in defense of his actions and any legal authority he considers pertinent to that defense.

Background

William Swindoll was insured with State Farm. His vehicle was totaled in an accident with an uninsured vehicle; he was not at fault. When the policy’s personal injury protection (PIP) benefits were exhausted, State Farm refused to pay any further bills. Swindoll sued State Farm for uninsured motorist benefits. State Farm’s defense theory at trial was that Mr. Swindoll was not believable and that he did not actually suffer injuries as a result of the accident.
State Farm called Dr. Wender on the second day of trial. Dr. Wender acknowledged that over $1,000,000 had been paid by State Farm for his expert medical consultations and testimony during the three calendar years preceding his examination of Mr. Swindoll.[2] While being cross-examined by Mr. Swindoll’s counsel, Dr. Wen-der ignored the questions asked of him and delivered his own, unsolicited opinions regarding Mr. Swindoll. On several occasions, the trial court admonished Dr. Wen-der and instructed him to answer the questions directly. In one such instance, Dr. Wender stated:
Q: [by plaintiffs counsel] Did you see in the records where he said he felt like he got hit by a Mack truck the next day, sir?
A: [Dr. Wender] Sir, I think the best way to crystallize what happens to somebody is see what was specifically stated at the scene. The patient said nothing was wrong with him sir. He didn’t even go to the hospital.
Q: Doctor, have you ever in your 30 years of practice ever had any patients where after trauma, after an event, they say, well, jeeze, I think I am okay, no problem, but, boy, the next day, the following day they wake up and say, Boy, my neck hurts, my leg hurts, my knee hurts. Has that ever happened to any patient you have ever treated in 30 years?
*550 A: Yes, and the following day they go to a hospital emergency room. Did he go to an emergency room? No.
After this answer, the trial judge excused the jury and spoke directly to Dr. Wender:
THE COURT: Let me just observe it is a quarter to 5. I understand this is the trial and we need a little bit of drama, but Mr. Hoffman, ask questions; Doctor, answer them.
THE WITNESS: Don’t be combative, then.
THE COURT: No, the combative is coming from both sides. Answer the question and then explain it.- Okay?
THE WITNESS: Then ask me straight questions.
THE COURT: I believe he has been asking you straight questions. You need to answer them. Okay.
THE WITNESS: I will try.
THE COURT: Okay. You answer and explain.
THE WITNESS: As long as I am given a chance to, Judge.
THE COURT: Dr. Wender, answer the questions, most of them are yes or no, and then you may explain.
Despite these clear directions and his extensive experience as an expert witness, Dr. Wender continued to circumvent counsel’s questions. This resulted in further objections and admonitions. The “final straw” in the sequence occurred in this exchange during the continued cross-examination:
Q: And you just told me he never had one neck complaint prior to that car crash that we just saw the picture of, correct?
A: Well, sir, you know — •
Q: Correct?
A. Well, in answer to your question, correct. However,
Q. Thank you doctor.
A. As you know, but I bet he will not have a com/plaint the day you walk out of this courtroom either, sir.
Mr. Hoffman: Judge—
THE COURT: Okay. Take the jury out, please. Do not discuss the case.
THE COURT: Do you have any motions?
MR. HOFFMAN: Mistrial, Your Honor. THE COURT: Dr. Wender?
THE WITNESS: Yes, ma'am?
THE COURT: You are a highly respected physician in this community. And you have testified, I don’t know, hundreds, maybe thousands of times as an expert witness. Do you not know that that sort of speculative and inflammatory opinion which has nothing to do with your opinion in this case, but comments on the credibility of a witness as to what you bet his is going to do causes extreme damage to your opinion and to the Court’s ability to adjudicate fairly and impartially in this matter and the jury’s ability to adjudicate fairly and impartially in this matter?
THE WITNESS: In all candor, I didn’t.
THE COURT: Well, you just learned it, because I am granting a mistrial.
Don’t ever do that again. You know darned well that you can’t say what you bet somebody is going to do. Your job is to come in here, Doctor, and to give your opinions based upon what you see, what the tests are. But you are never to comment on whether or not a witness is credible or not credible and what they are going to walk out of the courtroom and do, as if to imply that they are not telling the truth, and number two, that their lawsuit is frivolous. That is just not for you to do.
*551 THE WITNESS: Okay. I am sorry. I really didn’t know.
THE COURT: I am granting a mistrial. MR. HOFFMAN: Thank you, Your Honor.
THE COURT: I will see you tomorrow.
For the record, I don’t think there is anything that can be done to cure that sort of inflammatory statement. And, Doctor, I am going to think about this and consider whether or not I need to do anything else in this matter. But that was highly inflammatory and uncalled for statement in this case.
THE WITNESS: Okay. I am sorry. I didn’t know I couldn’t say that.
THE COURT: You didn’t know that you couldn’t say that you would bet that tomorrow a plaintiff is going to walk out and say the he doesn’t have any complaints? You didn’t know that you couldn’t say that? How many jury trials have you testified in?
THE WITNESS: It never came up like that.
THE COURT: Well, you know what, Doctor, you volunteered that information without it being called for.
(Emphasis added).
The plaintiff then filed a motion for sanctions, including attorney’s fees and costs, against State Farm based on the “flagrant violations” of the court’s instructions by Dr. Wender as State Farm’s expert. During the hearing on the motion for sanctions, the court made additional observations:
THE COURT: Yes. What I wanted to put on the record was, that may have not made the record, was that there was — it was while the doctor was testifying about the EMT and what the procedure of the EMT was. And there was an objection, the question was whether or not the EMT would have gone through certain procedures.
There was an objection, I turned to go when you came sidebar, both sides, and before that, and I think the record will reflect at least my one word, before that the doctor turned to the jury and goes, “Well, they really do that.” And it was sort of under his breath, and I don’t know if it was caught on the record. But I said — gave him a look, “a look,” and said, “Doctor.”
It was those sorts of behaviors in addition to his last testimony. And that happened, that sort of nonverbal communication with the jury, that is at least one time that I can remember, specifically remember it happening, but I believe it happened more than once. And that throughout his testimony there was this nonverbal communication with the jury and that was when an objection was pending, when the court was ready to rule.
It was at that time disturbing enough to the court that, even in front of the jury, that I, only with one word, granted, but I let the doctor know, as minimal a way as I could because the jury is sitting there, that his behavior was inappropriate.
The trial court further found that:
Dr. Wender’s behavior was totally unacceptable, disrespectful to the Court and to the jury, to the plaintiffs attorney. I know that there were times that the plaintiffs attorney’s, some of his questions were argumentative, but his questions did not rise nearly to the level of behavior that Dr. Wender’s behavior was, the behavior of Dr. Wender that was witnessed by the Court. And it is Dr. Wender’s responses that caused the mistrial. It was just so uncalled for.
The court found that the mistrial was caused by State Farm through its expert’s *552 behavior[3] and that the misconduct was in furtherance of State Farm’s defense. Regarding the imputation of Dr. Wender’s misconduct to State Farm, the trial court’s order found:
As State Farm’s expert witness, it was State Farm’s counsel’s responsibility to control its witness. As such, State Farm’s counsel should have requested a recess and spoken with their expert witness about his inappropriate conduct prior to the mistrial.
The trial court imposed sanctions of $20,100.00 for attorney’s fees and costs against State Farm, and this appeal followed.

Analysis

The trial court has inherent authority to impose attorney’s fees against an attorney for bad faith conduct. Moakley v. Smallwood, 826 So.2d 221 (Fla.2002). Such a sanction requires a finding of bad faith that “must be predicated on a high degree of specificity in the factual findings.” Id.
Similarly, the court may impose such a sanction against a party that has engaged in “inequitable conduct,” i.e., “where one party has exhibited egregious conduct or acted in bad faith.” Bitterman v. Bitterman, 714 So.2d 356, 365 (Fla.1998). But in this case, there is no finding that State Farm’s attorneys, much less any State Farm officer or employee, coached Dr. Wender or elicited the testimony in question.
We agree that “[i]n practice it is generally understood that the party designating an expert witness in civil actions becomes responsible for the expert’s conduct as a witness.... ” Pevsner v. Frederick, 656 So.2d 262, 264 (Fla. 4th DCA 1995) (Farmer, J., concurring). An expert’s failure or refusal to comply with court orders “may, in the court’s discretion, result in the loss of the right to call that expert to testify at trial.” Id. at 266. The power to regulate a party’s use of expert witnesses is a matter respecting the conduct of trial that lies in the sound discretion of the trial judge. Id. (citing Webb v. Priest, 413 So.2d 43 (Fla. 3d DCA 1982)). As regards the imposition of sanctions against a party or its counsel for the misconduct of an expert, however, we find no rule of imputation that can justify such an award without some bad faith or egregious conduct on the part of the party or counsel as well.
In Pevsner, the Fourth District quashed an order awarding sanctions against a non-party defense witness for discovery violations. The majority opinion concluded that, in the case of personal sanctions (as opposed to remedies affecting a party under the Florida Rules of Civil Procedure), “the sole sanction available for a nonparty deponent’s failure to obey an order compelling his deposition is contempt.” Id. at 263. In that case, the trial court had expressly stated that it was not holding the expert witness in contempt, and there was no finding that the expert’s disobedience was willful. Under that analysis, a sanction directed against Dr. Wender individually would require a finding of contempt after appropriate notice and hearing.
Based on the existing motion, record, and findings, we reverse the order impos *553 ing sanctions against State Farm for the misconduct of Dr. Wender.
Reversed and remanded.

. As detailed below, the trial court indicated a disinclination to sanction Dr. Wender individually. The record discloses, however, that this occurred at a hearing on the only motion for sanctions before the court — a motion by the plaintiff/appellee against State Farm and only State Farm. The trial court also denied the appellee's motion to strike Dr. Wender as a State Farm expert upon retrial. We neither encourage nor discourage the appellee regarding a redirected motion.

. In the unrelated case of Buck v. Chin, 19 So.3d 1132, 1134 (Fla. 3d DCA 2009), we summarized Dr. Wender's compensation by State Farm and observed that those figures “should be sufficient to allow the plaintiff to argue that Dr. Wender might be more likely to testify favorably on behalf of one side rather than another, and for jurors to get the point.”

. Prudently, Dr. Wender arranged for personal counsel to be present at the hearing on the motion for sanctions. The pending motion did not, however, seek the imposition of sanctions against Dr. Wender individually. During the hearing on that motion, the trial court said she had "thought about holding him in contempt and sanctioning him” but would not do so.