# Third District Court of Appeal

## State of Florida

Opinion filed February 21, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1371
Lower Tribunal No. 19-17942
_____

**Pierre Marc Malek,**
Appellant,

vs.

**Marguerite Malek,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jason E. Dimitris, Judge.

Nancy A. Hass, P.A., and Nancy A. Hass (Fort Lauderdale), for appellant.

Paul A. McKenna & Associates, P.A., and Paul A. McKenna, for appellee.

Before EMAS, SCALES and MILLER, JJ.

PER CURIAM.

In this ongoing dissolution of marriage case, appellant Pierre Marc Malek ("Husband") challenges a July 21, 2022 order requiring him to complete fifty hours of community service as a sanction for trying to disrupt the dissolution proceedings by shooting and maiming appellee Marguerite Malek's ("Wife") cats with a pellet gun. We reverse because the trial court's inherent power to sanction a litigant does not extend to the imposition of a penal sanction without compliance with the procedural requirements of Florida Rule of Criminal Procedure 3.840.

## I.      Relevant Background

This dissolution proceeding commenced in 2019, and on August 6, 2020, Wife obtained from the trial court a domestic violence injunction against Husband. Among other allegations, Wife's motion asserted that Husband sought to intimidate Wife by threatening to kill her pet dogs. The relevant injunction language reads as follows:

> Violence Prohibited. [Husband] shall not commit, or cause any other person to commit, any acts of domestic violence against [Wife]. Domestic violence includes: assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any other criminal offense resulting in physical injury or death to [Wife] or any of [Wife's] family or household members who is residing in the same single family dwelling unit with [Wife]. Husband shall not commit any other violation of the injunction through an intentional unlawful threat, word or act to do violence to the [Wife].

2

On June 15, 2021, after discovering that her cats had been shot, Wife filed a motion for indirect criminal contempt or civil contempt, alleging that Husband had violated the terms of the domestic violence injunction by maiming her cats with a pellet gun. On September 13, 2021, however, Wife filed an amended contempt motion and withdrew her count for indirect criminal contempt, and the trial court proceeded on a civil contempt count only. The trial court conducted a multi-day evidentiary hearing via the Zoom platform on October 4, 19, 22, and 28, 2021.

During the course of the proceedings – both orally at the October 28, 2021 hearing and in its July 21, 2022 written ruling – the trial court observed that it likely lacked the authority to find Husband in civil contempt for violating the domestic violence injunction because the trial court was not seeking to encourage a behavior by Husband or to obtain Husband's compliance with a court order. See Bowen v. Bowen, 471 So. 2d 1274, 1277 (Fla. 1985) (describing the different purposes of civil and criminal contempt). The trial court instead relied on its "inherent authority to sanction" Husband for his pattern of interfering with the dissolution proceedings by taking harassing actions against Wife.

In the challenged sanction order, the trial court noted several cases that, in multiple contexts, uphold the trial court's inherent ability to sanction

3

litigants for behavior that undermines the administration of justice.[1]  The trial

court, while not ruling on Wife's contempt motion, nevertheless found that

Husband had engaged in the alleged conduct, such conduct was undertaken

to intimidate Wife, and a sanction was appropriate both to punish Husband

for engaging in the conduct and to deter future similar conduct. The trial court

entered the challenged order which Husband timely appealed.

## II.    Analysis

While a trial court has "considerable latitude" to impose a sanction to

address a party's abuse of the judicial process, Tramel v. Bass, 672 So. 2d

78, 82 (Fla. 1st DCA 1996),[2] the trial court's inherent power to sanction a

---

[1] See State Farm Mut. Auto. Ins. Co. v. Swindoll, 54 So. 3d 548, 552 (Fla. 3d DCA 2011) (holding generally that a trial court may impose a sanction against a party who acts in bad faith or engages in inequitable conduct); Favreau v. Favreau, 940 So. 2d 1188, 1189 (Fla. 5th DCA 2006) (holding that a trial court has the inherent authority to prevent the abuse of court procedure by barring further *pro se* filings); JP Morgan Chase Bank v. Combee, 883 So. 2d 330, 331 (Fla. 1st DCA 2004) (holding that, in the absence of a transcript, a trial court's dismissal of a case with prejudice as a sanction comes to the appellate court with a presumption of correctness); Tramel v. Bass, 672 So. 2d 78, 83 (Fla. 1st DCA 1996) (affirming the trial court's striking a litigant's answer and entering a default against him as a sanction for fraud upon the court as "the trial court must be accorded considerable latitude in dealing with serious abuses of the judicial process"); S.Y. v. McMillan, 563 So. 2d 807, 809 (Fla. 1st DCA 1990) (holding that the trial court has inherent authority to control the conduct of its proceedings by authorizing the shackling of a juvenile offender).

[2] Indeed, trial courts may impose attorney's fees against a litigant for bad faith conduct, irrespective of whether a statute or rule authorizes attorney's

litigant is confined to punishments that are not penal in nature. For a trial court to impose a penal sanction for conduct that is neither seen nor heard by the trial court, compliance with rule 3.840 – the rule governing indirect criminal contempt proceedings – is mandatory. Pernetti v. Pernetti, 299 So. 3d 479, 480 (Fla. 3d DCA 2020) ("Indirect criminal contempt proceedings require strict adherence to Florida Rule of Criminal Procedure 3.840.").

If after complying with the procedural requisites of rule 3.840 (which include an order to show cause, an answer, an arraignment, and a hearing at which the contemnor has the right to counsel and to compulsory process), the trial court renders a judgment reciting the facts constituting the contempt and finds and adjudicates the contemnor guilty, a trial court may impose a sentencing sanction that includes incarceration. See Haeussler v. State, 100 So. 3d 732, 733 (Fla. 2d DCA 2012). Here, the fifty hours of community service imposed by the trial court constituted an alternative to incarceration; hence, Husband was entitled to the same constitutional protections

---

fees. See Pub. Health Tr. of Miami-Dade Cnty. v. Denson, 189 So. 3d 1013, 1015 (Fla. 3d DCA 2016). A trial court may strike a pleading or dismiss a case in response to litigant misconduct. See Ledo v. Seavie Res., LLC, 149 So. 3d 707, 710 (Fla. 3d DCA 2014); cf. Kozel v. Osterndorf, 629 So. 2d 817, 818 (Fla. 1993) (setting forth six factors a trial court should consider before dismissing a case with prejudice based on attorney misconduct or error). A trial court may also exercise its sanction power to bar *pro se* filings. Favreau v. Favreau, 940 So. 2d 1188, 1189 (Fla. 5th DCA 2006).

embodied in rule 3.840 that are afforded to any criminal defendant in a criminal proceeding. De Castro v. De Castro, 957 So. 2d 1258, 1260 (Fla. 3d DCA 2007).

While we are not unsympathetic to the dilemma the trial court faced from Husband's conduct, and while we certainly do not condone Husband's behavior, once Wife withdrew her motion for indirect criminal contempt and pressed a motion for civil contempt only, the trial court could not employ its inherent power to sanction where the sanction was penal in nature.

Reversed.