668 So.2d 828 (1995)
G.G.
v.
R.S.G.
2940080, 2940112.
Court of Civil Appeals of Alabama.
August 4, 1995.
*830 Floyd Minor and John Olszewski, Montgomery, for Appellant G.G.
Simeon F. Penton of Kaufman & Rothfeder, P.C., Montgomery, for appellee/cross appellant R.S.G.
R.S.G., pro se.
PER CURIAM.
This is a divorce case.
After approximately six years of marriage, R.S.G. (husband) filed a complaint for a divorce from G.G. (wife), alleging incompatibility of temperament and requesting, among other things, a division of property, an order establishing custody and visitation regarding their minor child, child support, and attorney fees and costs. The wife answered and counterclaimed for a divorce, alleging incompatibility of temperament and requesting custody of the minor child, child support, alimony, a division of property, and attorney fees and costs.
Ore tenus proceedings were held in July 1994. Ultimately, the trial court divorced the parties, and, inter alia, it divided the marital property, awarded custody of the minor child to the wife, awarded the wife $1500 monthly child support and $1000 monthly periodic alimony, and ordered the husband to pay certain medical expenses for the child, COBRA insurance expenses for the wife, and the wife's attorney fees. The trial court further ordered that "neither party to this action shall ever again remarry." The wife's post-judgment motion was denied, and she appeals. The husband cross-appeals.
The wife first contends that the trial court abused its discretion in ordering only $1000 monthly periodic alimony and by failing to order the husband to pay one-half of her medical expenses incurred after the expiration of her COBRA insurance eligibility. She argues that the evidence presented at trial justified a greater amount of support than was ordered.
A review of the record indicates that the wife was awarded, among other things, an IRA, a savings account, a substantial amount of cash and personal property, and a life insurance policy on the husband naming her as the sole and exclusive beneficiary. Furthermore, the husband was ordered to maintain medical insurance on the minor child, and he was ordered to pay "all reasonable non-covered medical, dental, ophthalmic, orthodontic, and psychological expenses ... not covered by said insurance."
When evidence is presented ore tenus in a divorce case, the judgment of the trial court is presumed to be correct, and this court will not reverse, absent a finding of a plain and palpable abuse of discretion. Brannon v. Brannon, 477 So.2d 445 (Ala.Civ. App.1985). The division of property and the award of periodic alimony pursuant to divorce are matters that rest soundly within the discretion of the trial court, and its judgment will not be disturbed on appeal absent an abuse of that discretion. Sketo v. Sketo, 608 So.2d 759 (Ala.Civ.App.1992); Montgomery v. Montgomery, 519 So.2d 525 (Ala.Civ. App.1987). Additionally, the issues of the property division and alimony are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either issue. Montgomery, 519 So.2d 525. The extensive record in this case contains ample evidence supporting the trial court's determination regarding alimony. We cannot hold that the trial court abused its discretion in ordering only $1000 per month in periodic alimony.
The wife also argues that the trial court abused its discretion by failing to order the husband to pay one-half of her non-covered medical expenses after the expiration of her COBRA insurance eligibility. The record discloses that the wife suffers from the Hepatitis-C virus, an incurable, non-fatal illness, which she contends prevents her from working on a full-time basis and requires a significant amount of expensive medical treatment. The wife testified that the symptoms of her illness include fatigue, weakness, nausea, cramps, and muscle aches. She testified that she is not currently taking the prescribed medication because, she said, she cannot afford it, and that she is waiting until after the divorce to undergo further *831 treatment. It is noteworthy that if the medical expenses become too burdensome, the wife may petition to increase the amount of her support, based upon a change in circumstances. See Laws v. Laws, 653 So.2d 293 (Ala.Civ.App.1994). Accordingly, we find that the trial court did not abuse its discretion in failing to order the husband to pay for the wife's future, unspecified medical expenses.
The wife also argues that the trial court erred by prohibiting her from ever remarrying. She argues that Ala.Code 1975, § 30-2-8, the statute relied on by the trial court, is unconstitutionally vague and violates her due process rights. The record indicates that the wife gave proper notice to the attorney general, pursuant to Ala.Code 1975, § 6-6-227, and that he waived participation in this action. In pertinent part, Ala.Code 1975, § 30-2-8, states:
"In making his judgment, the judge shall, as the evidence and the nature of the case may warrant, direct whether the party against whom the judgment of divorce is made be permitted to marry again.... In cases where the right is affirmatively disallowed to the divorced party to remarry, it shall be competent for the judge, upon motion and proper proof, to allow the moving party to marry again, as justice may seem to require."
The United States Supreme Court, in recognizing that marriage is a fundamental right, stated that "[t]he freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness." Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967). See also Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). The Supreme Court held that state regulations that interfere with the fundamental right to remarry will be subject to strict scrutiny and will be upheld only if they are "supported by sufficiently important state interests and [are] closely tailored to effectuate only those interests." Zablocki, 434 U.S. at 388, 98 S.Ct. at 682. We note, however, that it is not difficult to conceive of instances where sufficient important state interests exist where the exercise of a trial court's discretionary authority to prohibit remarriage may be justified, such as mental incompetency. As Mr. Justice Powell noted in his special writing:
"The marriage relation traditionally has been subject to regulation, initially by the ecclesiastical authorities, and later by the secular state. As early as Pennoyer v. Neff, 95 U.S. 714, 734-735, 24 L.Ed. 565 (1878), this court noted that a State `has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved.' The State, representing the collective expression of moral aspirations, has an undeniable interest in ensuring that its rules of domestic relations reflect the widely held values of its people.... State regulation has included bans on incest, bigamy, and homosexuality, as well as various preconditions to marriage, such as blood tests. Likewise, a showing of fault on the part of one of the partners traditionally has been a prerequisite to the dissolution of an unsuccessful union. A `compelling state purpose' inquiry would cast doubt on the network of restrictions that the States have fashioned to govern marriage and divorce."
Zablocki, 434 U.S. at 398-99, 98 S.Ct. at 687-88.
Additionally, Ala.Code 1975, § 30-2-8, is distinguishable in that it allows a divorced party, who has been judicially prohibited from remarrying to petition the trial court and submit proof for leave to be allowed to marry again in the future. While no sufficiently important state interests are specifically stated within the statute, that fact, alone, does not require this court to conclude that the statute is overly broad. See Zablocki, 434 U.S. at 374, 98 S.Ct. at 674-75. The statute simply allows the trial court, on a case-by-case basis, in a divorce proceeding, the discretionary authority to prohibit a party from remarriage if that prohibition serves to effectuate a legitimate state interest, and is appropriate in light of the peculiar facts and circumstances of the case. Therefore, the statute, when narrowly applied, despite its imprecisions, is a permissible exercise of this State's power to regulate *832 marriage and the family. The wife has not shown that, as applied to her, the statute is per se unconstitutional. Accordingly, we decline to proclaim the statute unconstitutional.
We are reluctant to declare it unconstitutional in the disposition of this case since we only need to consider the wife's argument in terms of whether the trial court abused its discretion in prohibiting her future remarriage. We are mindful that the trial court in a divorce matter has broad discretionary power, and that when its judgment is based upon ore tenus evidence, a presumption of correctness attaches to the judgment on appeal. Rea v. Rea, 599 So.2d 1206 (Ala.Civ. App.1992).
After thoroughly and cautiously reviewing this entire record, this court is at a loss to ascertain what evidence the trial court relied upon to find "that there is ample evidence to substantiate" its order prohibiting remarriage. At one point in its order, the trial court expressly noted that "some of the complexity of the issues is related to the wife's serious medical condition.... The husband's paraphilia also constitutes a significant role in this complex case." Our review of the record, however, fails to disclose evidence to justify ordering a prohibition against remarriage in this case. Neither the wife's medical condition, nor the husband's so-called "paraphilia" warrants the trial court's prohibition against remarriage. In this case, the record is devoid of any evidence that would support a finding that some permissible State objective is reached by prohibiting either of these parties from ever remarrying. See Loving, 388 U.S. at 1, 87 S.Ct. at 1818; also Zablocki, 434 U.S. at 374, 98 S.Ct. at 674-75. We conclude, therefore, that the instant case does not present sufficient evidence justifying such a prohibition, and we must conclude that the trial court abused its discretion. Accordingly, although only the wife raises this issue on appeal, we reverse that portion of the trial court's judgment prohibiting remarriage by either party.
The husband raises several issues in his cross-appeal, including a contention that the trial court erred in its property division and by awarding periodic alimony. While the wife's medical condition may adversely affect her future ability to earn, the record discloses that the husband has a successful and stable professional career, and that his earnings have exceeded $200,000 annually in recent years. The record also indicates that the husband has substantial assets, including bank accounts and cash on hand, a profit-sharing account, stock, an IRA, and his business interest. The record contains evidence, including the husband's own testimony, regarding his marital misconduct, and the trial court's order expressly noted that "the husband was untruthful and unfaithful to the wife during the marriage." The husband argues that the trial court placed undue emphasis on his misconduct.
It is well established that, when dividing marital property or making an alimony determination, the trial court may consider many factors, including the earning capacity of the parties, their future earning prospects and station in life, their ages and health, the duration of the marriage, the recipient spouse's financial needs, the ability of the payor spouse to respond to those needs, and the conduct of the parties regarding the cause of the divorce. White v. White, 589 So.2d 740 (Ala.Civ.App.1991); Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App.1986); Sheffield v. Sheffield, 485 So.2d 1177 (Ala. Civ.App.1986). The division is not required to be equal, but it must be equitable in light of the evidence, and the determination of what is equitable rests soundly within the discretion of the trial court. Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App.1993). The husband fails to prove that the trial court abused its discretion in the division of property or in its award of alimony to the wife. Additionally, the husband's argument that the trial court abused its discretion in failing to grant him a credit against his child support obligation for the amount of private school tuition paid annually is without merit. Likewise, the husband's argument that the trial court erred in failing to suspend alimony or child support payments during the period of time that it takes the parties to sell the marital residence is without merit.
*833 For the foregoing reasons, the judgment of the trial court regarding the division of property, alimony, and child support is due to be affirmed; however, that portion of the judgment regarding the prohibition against remarriage is reversed, and the cause is remanded for the trial court to enter an order consistent with this opinion.
The wife's request for an attorney fee is granted in the amount of $2,000.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THIGPEN and YATES, JJ., concur.
ROBERTSON, P.J., concurs in the result.
MONROE and CRAWLEY, JJ., concur in part and dissent in part.
MONROE, Judge, concurring in part and dissenting in part.
I agree with the result reached in this case. However, I believe that § 30-2-8, Code of Alabama 1975, the statute that allows the trial court to use its discretion in deciding whether to prohibit a divorcing spouse to remarry, is vague and unconstitutional.
The wife contends that § 30-2-8 violates the Due Process Clause of the United States Constitution because it deprives her of the right to marry. Under a due process analysis, this court must apply the "strict scrutiny test" to a statute that infringes upon a fundamental right. Plitt v. Griggs, 585 So.2d 1317, 1324 (Ala.1991) (citing Gideon v. Alabama State Ethics Commission, 379 So.2d 570 (Ala.1980)). If a statute interferes with a fundamental right, the state must show the statute serves a compelling state interest and that the statute is necessary to achieve that interest. Schad v. Borough of Mount Ephraim, 452 U.S. 61, 68, 101 S.Ct. 2176, 2182-83, 68 L.Ed.2d 671 (1981); Dunn v. Blumstein, 405 U.S. 330, 338-39, 92 S.Ct. 995, 1001-02, 31 L.Ed.2d 274 (1972).
Section 30-2-8 specifically deals with the right of a party to a divorce to remarry. The statute says in pertinent part:
"In making his judgment, the judge shall, as the evidence and the nature of the case may warrant, direct whether the party against whom the judgment of divorce is made be permitted to marry again, and where in judgments no order is made disallowing the party the right to marry again, the party shall be deemed to have the right to remarry, subject to the restrictions set out in § 30-2-10. In cases where the right is affirmatively disallowed to the divorced party to remarry, it shall be competent for the judge, upon motion and proper proof, to allow the moving party to marry again, as justice may seem to require."
As the majority points out, the United States Supreme Court has recognized that "the right to marry is of fundamental importance," Zablocki v. Redhail, 434 U.S. 374, 383, 98 S.Ct. 673, 679, 54 L.Ed.2d 618 (1978), and has established that "the right to marry is part of the fundamental `right of privacy" implicit in the Fourteenth Amendment's Due Process Clause." Id. In discussing the right to marry, the Supreme Court said,
"We deal with a right of privacy older than the Bill of Rightsolder than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions."
Griswold v. Connecticut, 381 U.S. 479, 486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965).
Because § 30-2-8 interferes with one's fundamental right to marry, the state must show a compelling interest for having the statute. The statute does not suggest what interest the state is trying to promote in prohibiting some divorcing people from remarrying. Additionally, I believe it is important to note that the attorney general waived participation in this action. The state has offered this court no interest, compelling or otherwise, that the statute was designed to serve. The majority says that "it is not *834 difficult to conceive of instances where sufficient important state interests exist where the exercise of a trial court's discretionary authority to prohibit remarriage may be justified, such as mental illness, public health concerns, or fraud." Granted, these examples could be compelling state interests. But to pass constitutional muster, the statute also must be narrowly tailored to achieve that interest.
Section 30-2-8 gives the trial court unbridled discretion to decide who cannot remarry. The statute is broadly written to allow the trial court to forbid a party's remarriage "as the evidence and nature of the case may warrant." Further, the trial court can prevent a party from remarrying until "proper proof is shown as to why the party should be allowed to remarry. Nothing in the statute guides the trial court as to what cases may warrant prohibiting the remarriage of the parties. The same conduct or condition that would cause one judge to prevent a party from remarrying might be entirely permissible under another judge. Because of the broad discretion the statute gives to trial courts, similarly situated parties in the same circuit may or may not be allowed to remarry based simply upon the luck of the draw as to which trial court hears their divorces. Clearly, the statute is too vague and cannot pass constitutional muster. Regardless of what compelling state interests the majority thinks the statute might advance, the statute is not tailored narrowly enough to achieve only those interests.
Portions of § 30-2-8 interfere with the fundamental right of marriage. The state has not come forth with any compelling interest that is advanced by the statute. Even if there were a compelling state interest involved, the statute is not drawn narrowly enough to achieve only that interest. It is for these reasons that I would hold that those portions of § 30-2-8 allowing a trial court to prohibit a divorcing party from remarrying are unconstitutional.
CRAWLEY, Judge, concurring in part and dissenting in part.
Although I agree with the majority's opinion on the issues of alimony, property division, and child support, I must dissent from the judgment in part, because I conclude that Ala.Code 1975, § 30-2-8, is an unconstitutional deprivation of the due process guaranteed by the Fourteenth Amendment to the United States Constitution.
The majority correctly recognizes that a statute that restricts the right to marry, a fundamental right, is subject to strict scrutiny and that such a statute will only be upheld if it is "supported by sufficiently important state interests, and is closely tailored to effectuate only those interests." Zablocki v. Redhail, 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618 (1978). Section 30-2-8 is neither sustained by "sufficiently important state interests," nor "closely tailored to effectuate only those interests." Id.
The majority states that the statute constitutionally allows a judge to exercise his or her discretion to prohibit remarriage, to promote important state interests such as preventing marriages of those with mental illness, preventing fraud, and protecting the public health. These interests are protected and promoted by laws specific to these concerns (see Ala.Code 1975, §§ 30-1-4 through -18, for regulations relating to age, relationship, and license requirements; see Ala.Code 1975, § 13A-13-1, which prohibits bigamy; § 13A-13-2, which prohibits adultery; and § 13A-13-3, which prohibits incest). The constitution requires more than that a statute possibly promote unspecified important state interests; rather, a statute restricting a fundamental right must be narrowly drawn to accomplish only the important state interests. See id.
This case is an excellent example of how § 30-2-8 is not narrowly drawn to promote only important state interests. Section 30-2-8 provides that a judge may prohibit remarriage "as the evidence and the nature of the case may warrant." Certainly, the discretion given to a trial judge in a divorce case is not a narrow power but a broad power. Thus, this statute, by its very terms, is not narrowly drawn, because the trial judge utilizes his or her discretion to determine whether a party may exercise the fundamental right to marry.
*835 The majority states that § 30-2-8 is distinguishable from the Wisconsin statute invalidated by the United States Supreme Court in Zablocki supra. The Wisconsin statute provided that a person could not obtain a marriage license if he or she had a child support arrearage. The United States Supreme Court invalidated the statute and stated that the state's interest in ensuring that noncustodial parents support their minor children is a "legitimate and substantial" interest, "but, since the means selected by the State for achieving these interests unnecessarily impinge on the right to marry, the statute cannot be sustained." Id. at 388, 98 S.Ct. at 682. Obviously, the state's interest in protecting its minor children's welfare is stronger than providing judicial discretion to prohibit remarriage after divorce.
The majority reasons that § 30-2-8 is not unconstitutional, because it provides that a person who has been prohibited from remarrying may petition the court to receive permission to remarry "upon motion and proper proof, ... as justice may seem to require." This is not distinguishable from the Wisconsin statute, which allowed a person to obtain a marriage license once he or she proved that support orders were satisfied and that the children were not likely to become dependent on the state for support.
Because I cannot distinguish this case from the United States Supreme Court's decision in Zablocki supra, I conclude that § 30-2-8 is unconstitutional; therefore, I must respectfully dissent as to that issue.